## APPLEWHITE v. SESSIONS.
### No. 3248.

Court of Civil Appeals of Texas. Beaumont.
Feb. 17, 1938.

Russell & Edwards, of Nacogdoches, and Guinn & Guinn, of Rusk, for appellant.

Norman & Norman, of Rusk, and Smithdeal, Shook & Lefkowitz, of Dallas, for appellee.

WALKER, Chief Justice.

On the 12th day of November, 1927, L. Sessions, joined by his wife, sold and conveyed to J. M. Sessions by warranty deed a tract of land in Cherokee county, containing 48½ acres. This tract of land was a part of 201 acres conveyed to L. Sessions by C. H. Coleman, whereby Coleman reserved in himself the title to the mineral rights under this 48½ acres. The recited consideration paid by J. M. Sessions for his land was eight vendor lien notes, each for the sum of $128.90 with interest from the 22d day of November, 1927, at 7 per cent. per annum and with 10 per cent. additional as attorney's fees. J. M. Sessions defaulted in his payments after paying his first three notes, and L. Sessions filed suit against him thereon, cause No. 13137 on the docket of the district court of Cherokee county. J. M. Sessions defended that suit on the ground of breach of warranty. In open court the attorneys representing the parties agreed to settle that case, and on their announcement in open court that a settlement had been made, the judge entered on his docket a memorandum to that effect. After that entry was made on the docket, L. Sessions sold and indorsed his notes without recourse to appellant, J. O. Applewhite, for $580.85. Holding these notes, on the 22d day of November, 1935, appellant instituted suit thereon against appellee, J. M. Sessions, in district court of Cherokee county, praying for judgment for the amount of his notes, principal, interest, and attorney's fees, and for foreclosure of his vendor lien against the 48½ acres of land conveyed by L. Sessions to appellee. Appellee answered by plea of settlement that he and L. Sessions had settled all issues between them in cause No. 13137 growing out of the execution of the notes in issue, that L. Sessions offered to accept $200 in settlement of these notes and he accepted that offer; he pleaded tender in court of the $200 but made no tender; alternatively, he pleaded breach of warranty as in cause No. 13137. Only one issue was submitted to the jury, answered in the affirmative, "Do you find from a preponderance of the evidence that L. Sessions consented to the settlement of Cause No. 13137, styled Jerry M. Sessions vs. L. Sessions for the sum of $200.00 to be paid by Jerry M. Sessions to L. Sessions?"

Judgment was entered in favor of appellant for the sum of $200 with foreclosure of his lien, from which he prosecuted his appeal to the Court of Civil Appeals at Texarkana; the case is on our docket by order of transfer of the Supreme Court.

■■ The evidence does not support the judgment. We quote the testimony of Mr. W. H. Shook, attorney for J. M. Sessions in cause No. 13137:

"Q. I will ask you to state to the jury again; I want to be sure; I am hard of hearing, and want to know just what it was? A. The agreement was that Jerry Sessions was to settle for two hundred dollars—

"Court—Just tell all that happened with reference to that. A. Well, as is frequently the case, your Honor, when as a matter of fact this matter was arrived at, we all came around to the Court and announced to your Honor and you marked it off the Docket to the effect that the case was settled, and it seemed for some reason, I am not right sure now, my recollection is I agreed for time and the details had to be worked out here, and I just went off to Dallas, and Mr. Norman and Mr. Perkins never were able to get the details worked out, and they fiddled backward and forward, and they were not able to straighten it out, and I thought the thing was settled, and he raised some question whether we wasn't to pay any interest whatever it was, and fix the release up, and we discovered after all the matters were ready to be worked out that this suit of J. O. Applewhite vs. Jeremiah Sessions was filed.

"Q. The next thing you heard of it, J. O. Applewhite brought suit against Jeremiah Sessions to foreclose his would-be lien on the purchase from L. Sessions? A. Yes, sir. For some reason, you and Mr. Perkins did not seem to be able to get the final papers prepared, and I was down here for some purpose before the next term of court, and I was fixing the agreement, agreeing to go ahead and pay the interest as he contended to charge it, and then before I got that consummated I learned about this suit being filed that we are trying here now."

Upon cross-examination, the witness further testified:

"Q. Was there any judgment prepared in this case? A. No judgment has ever been entered in this case other than the notation made there—'Settled'.

"Q. Did he say there was ever an agreement in writing submitted to him for his signature in connection with this? A. I didn't know that he could write his name. * * *

"Q. I mean was there any agreement submitted to settle? A. I don't know; you will have to ask his attorney.

"Q. If it was, you never saw it? A. No, sir; I didn't see it.

"Q. Did he surrender these notes to Jeremiah Sessions? A. No, sir; because we hadn't worked the details up.

"Q. You hadn't agreed on what the details were? A. That Mr. Copeland was going to pay the money. * * *

"Q. What do you mean? A. I simply mean I was here and got through some business and rushed to Dallas, and left Mr. Norman and Mr. Perkins to work out the consummation of the agreement and transfer the papers and pay the money, and for some reason they didn't conclude the business. * * *

"Q. As far as you know, Jeremiah and L. Sessions never signed any sort of agreement, did they? A. No, sir, as far as I know they didn't sign anything.

"Q. You did not prepare anything? A. No, sir. * * *

"Q. Has that money been paid? A. No, sir.

"Q. And hasn't tendered the money? A. We repeatedly told Mr. Perkins, during the five months before suit was filed that we were ready to pay it any time he got the notes and papers in hand and ready to.

"Q. You were not willing to pay it unless you got the notes in hand? A. We were not willing to leave the notes outstanding and there wasn't even a contemplated judgment entered. * * *

"Q. Who was to get the notes? A. When he paid the money over those notes were to be delivered to Mr. Copeland; that was all there was to it, and we got our fee and Mr. Copeland was to pay us our fee and held the notes as security for the amount he paid L., and the amount he paid us on our fee."

Mr. B. B. Perkins, attorney for L. Sessions in that suit, testified as follows:

"Q. Those negotiations for settlement you are talking about never did go through, did they? A. Well, it never went through for the reason that we never could get the money.

"Q. That was part of the agreement, that you would have to have the money before the case was settled; you didn't consider the case settled until you got the money that was due? A. I wanted the money and I went there after it once or twice.

"Q. He wanted those notes, Mr. Copeland did, didn't he? A. * * * Mr. Copeland said to me * * * that it was all right, he was ready to pay whenever the proper transfer was made to him; anyway, he didn't pay it.

"Q. He never did pay you the money and was waiting for Mr. Norman to tell him to let it go? A. Yes, sir; that is true, so I understand.

"Q. Now, was there any formal judgment drawn and executed? A. No, sir; it never was prepared, as I recall.

"Q. No agreement or compromise was ever drawn up or ever signed? A. No. * * *"

The testimony of Mr. Shook and Mr. Perkins controls this case. They represented their clients in the settlement agreement, and their authority to act, on the facts testified to by them and on the verdict of the jury, cannot be questioned. That they dealt with each other in good faith, and that they made their statement in open court to the trial judge in good faith that the case had been settled, cannot be questioned; and, on their statement that a settlement had been made the trial judge entered on his docket the following memorandum: "6/24/35— settled." But under the undisputed testimony the settlement was never consummated; all that their negotiations amounted to was an agreement to settle. Mr. Shook, representing J. M. Sessions, left Rusk, Cherokee county, and returned to Dallas before the details of the proposed settlement had been agreed upon; under his statement the details were to be worked out in a further conference between Mr. Norman, Mr. Shook's associate, and Mr. Perkins, representing L. Sessions. After Mr. Shook left Rusk, the details of the settlement were not adjusted. In settlement agreements, as in all other contracts, the minds of the parties must meet; under all the evidence the settlement in this case did not progress to the point where the minds of the parties met.

■ But, if the evidence raised the issue that the minds of the parties met on the details of the settlement, the issue was for the jury. Appellee contends that, under the evidence, the agreement was consummated, and J. M. Sessions was to pay the

$200 in the fall of 1935. If that construction of the evidence be conceded—but the evidence in its strongest light does not support the concession—then Mr. Perkins' testimony was to the effect that the $200 was to be paid in cash; that it was part of the agreement that the $200 was to be paid in cash. What was the agreement? By his charge the court took that issue from the jury, charged them that the settlement had been made, and asked them only whether or not J. M. Sessions consented to the settlement. Issue No. 1 as submitted to the jury was subject to appellee's exception that it was on the weight of the evidence.

The other issues raised by the pleading and the testimony can be disposed of upon another trial.

It follows that the judgment of the lower court should be reversed and the cause remanded for a new trial, and it is so ordered.

Reversed and remanded.