## APPLEWHITE v. SESSIONS et al.

### No. 3856.

Court of Civil Appeals of Texas. El Paso.

June 29, 1939.

Rehearing Denied July 17, 1939.

A. T. Russell, of Nacogdoches, and Guinn & Guinn, of Rusk, for appellant.

Norman, Stone & Norman, of Jacksonville, and Smithdeal, Shook & Lefkowitz, of Dallas, for appellee.

WALTHALL, Justice.

The facts in this case are somewhat complicated, two suits involving substantially the same subject matter having been consolidated and tried together, but as we understand them, they are substantially as follows:

On November 12, 1927, L. Sessions and wife conveyed to J. M. Sessions by war-

ranty deed a tract of land in Cherokee County, Texas, containing 48½ acres. This tract of land was a part of 201 acres conveyed to L. Sessions by C. H. Coleman, in which conveyance Coleman reserved to himself the mineral rights under the 48½ acres. The record consideration paid by J. M. Sessions for the land was eight vendor's lien notes each in the sum of $128, with interest from date at seven percent per annum, and ten percent for attorney's fee. After paying the first three notes J. M. Sessions defaulted in the other payments, and L. Sessions filed suit against him in cause No. 13137. J. M. Sessions defended that suit on the ground of breach of warranty.

In open court the attorneys representing the parties agreed to settle that case, and on such announcement the trial judge entered on his docket: "8/24/35—Settled," J. M. Sessions agreeing to pay $200 to L. Sessions.

After that entry was made on the docket L. Sessions sold and endorsed, without recourse, the unpaid J. M. Sessions notes to appellant, J. O. Applewhite.

Applewhite instituted this suit on the J. M. Sessions notes in the District Court of Cherokee County praying for judgment on the notes and for foreclosure of the vendor's lien on the 48½ acres of land.

J. M. Sessions answered by plea of settlement with L. Sessions for $200, as above; he pleaded tender, but made no tender; alternatively he pleaded breach of warranty as in Cause No. 13137.

The case was tried and judgment rendered in favor of Applewhite for $200, with foreclosure of the lien. Applewhite appealed the case. The case was transferred to the Beaumont Court of Civil Appeals, and was reversed and remanded (see Applewhite v. Sessions, 114 S.W.2d 289.) The appellate court held that under the evidence the "settlement" was never consummated—that the record shows only an agreement to settle, and that the details of the settlement did not progress to the point where the minds of the parties met.

As said, on the trial the court ordered consolidated Cause No. 13361, J. O. Applewhite v. J. M. Sessions, and Cause No. 13137, J. M. Sessions v. L. Sessions, and required all parties to replead.

The others pleaded substantially as on the former trial, J. M. Sessions pleading a breach of warranty as to the mineral interest in the land, and sought to recover damages for the breach which he alleged in his cross action to be $1500. L. Sessions sought to recover on the notes with foreclosure of the vendor's lien.

The agreement for settlement of the controversy between J. M. Sessions and L. Sessions for $200 was not denied, which might be paid at that time or in the fall, with interest. J. M. Sessions tendered the $200 and interest, and at all times demanded the return of his notes.

The trouble we see as to the consummation of the agreement was that no one prepared the judgment to be entered in the former suit, No. 13137, and no judgment was entered.

On the trial the jury found:

1. The controversy between J. M. Sessions and L. Sessions was settled by the agreement at the sum of $200 to be paid by J. M. Sessions in cash, or in the fall with interest.

2. The settlement as agreed was made.

3 and 4. Submitted conditionally and not answered.

5. The market value of the mineral interest on the 48½ acres of land on November 12, 1927, was $25 per acre.

6 and 7. The jury made no answer to the inquiry whether the mineral estate in the land had any actual or intrinsic value on November 12, 1927.

8. The cash market value of the land on November 12, 1927, subject to mineral reservations of C. H. Coleman, was $20 per acre.

9. J. M. Sessions understood that one-half of the minerals had been reserved by C. H. Coleman and wife in conveying to L. Sessions.

10. It was the intention of the parties that in the deed from L. Sessions and wife to J. M. Sessions the minerals should be conveyed.

10-A. $500 was the portion of the consideration of $1031.20 agreed to be paid by J. M. Sessions to L. Sessions, represented the value of the minerals to be conveyed to J. M. Sessions by L. Sessions on November 12, 1927.

11. J. M. Sessions did not have knowledge of such facts which would cause an ordinarily prudent person to examine the deed records to ascertain if the minerals had been reserved on the land in controversy by C. H. Coleman in his deed to

L. Sessions at the time L. Sessions executed the deed to J. M. Sessions.

12. L. Sessions acted as agent of J. M. Sessions in the purchase of the 48½ acres of land from C. H. Coleman.

On the verdict of the jury the court rendered judgment "that plaintiff, J. O. Applewhite do have and recover of and from the defendant the sum of $243.00, which is $200 with interest," then and there in the registry of the court.

The court observed in the judgment that it was made to appear that J. M. Sessions, at all times since the filing of cause No. 13361, was willing and tried to pay the $200 and the interest and the costs in cause No. 13137, and that plaintiff and his assignor refused to accept same, and that there was no necessity or justification for filing cause No. 13361. The court taxed the cost in cause No. 13361 against plaintiff Applewhite, and in cause No. 13137 against J. M. Sessions.

From the judgment rendered J. O. Applewhite appealed.

### Opinion.

Appellant filed fifty assignments of error in this case, and based thereon, and as germane thereto, filed and presents in his brief nineteen propositions.

The contention is made in the propositions that the uncontradicted evidence shows that if any agreement to settle the case was ever made between L. Sessions and J. M. Sessions, it was never carried to a conclusion, and that either had the right at any time before the money was paid and accepted to withdraw the offer of settlement, and that L. Sessions withdrew any offer to settle by selling the notes to plaintiff Applewhite.

We think the evidence on this trial is sufficient to show that a full agreement and settlement of the amount due on the notes was reached and made by the parties and the jury so found. We are not prepared to concede, as contended by appellant, that, under the record before us, either party had the right at any time before the $200 was paid and accepted "to withdraw the offer of settlement." The record, in our opinion, does not show simply an offer of settlement but an agreed settlement, and the trial court and jury so understood it. We have not the evidence on the former trial before us, but we have carefully reviewed the evidence on the trial now under consideration.

The transaction was this: L. Sessions had conveyed the land in question by general warranty deed to J. M. Sessions, largely on credit, taking notes and retaining vendor's lien for the purchase price. The deed from Coleman to L. Sessions excepted and reserved all the minerals. In consequence of this excepting reservation L. Sessions did not convey to J. M. Sessions any of the minerals. After the lapse of several years J. M. Sessions sued L. Sessions for damages on account of the breach of the warranty, placing his damages at $1500, and praying that he recover damages against L. Sessions for said damages. L. Sessions immediately filed a cross action seeking to recover on the vendor's lien notes and foreclose his lien. After one continuance and after extended negotiations, it was agreed that L. Sessions was liable on his warranty and that J. M. Sessions was entitled to recover as damages the difference between the value of the land with and without the minerals, the amount of this difference being agreed upon, and it was agreed that it should be credited on the notes, and as a result, leaving a balance due on the notes of $200. This balance it was agreed that J. M. Sessions should pay, but should have until fall, or his crops were gathered, to pay, unless he should or could secure Mr. Joe Copeland to take up the balance due on the transfer and delivery of the notes by L. Sessions to Mr. Copeland to be held as security for the $200. Hence there was a complete accord and satisfaction of the claim of J. M. Sessions against L. Sessions for damages. There was no novation but a mere continuation of the notes for an unpaid balance of $200. A failure to pay could not and did not result in destroying the compromise settlement, or in abrogating the accord as well as the satisfaction of J. M. Sessions' claim against L. Sessions for damages on account of the breach of the warranty. In addition to this, it is clearly reflected by the record that the time of the payment of the $200, even if it be treated as novation and a new and independent obligation to pay separated from the balance remaining due on the original debt, was not of the essence of the settlement agreement. It is clearly reflected that the accord and satisfaction as to the damages for breach of the contract was not made dependent upon the payment of the $200 immediately or at all, but it was the agreed balance due on the original purchase money notes, after the extin-

guishment of J. M. Sessions' claim for damages. This is clearly the theory on which the trial court acted and is very clearly supported by the whole record and evidence. The transaction was equivalent to the payment by J. M. Sessions of all his debt except $200. In such case, L. Sessions would have a debt of only $200, as evidenced by said notes and secured by a vendor's lien.

Even if the settlement agreement might be treated as novation, and the substitution of a simple promise to pay $200 in settlement of the notes, instead of a settlement of the claim for the damages and crediting the amount of damages on the notes and continuation of the notes, the time of payment could not be treated as of the essence of the payment because as manifested it was not so treated by the parties in negotiating or entering into the agreement, nor was it made a condition of the agreement made.

The evidence clearly shows, we think, and the jury so found, that L. Sessions' attorney, with his consent, announced the settlement to the court. Without quoting the evidence at length, the attorney testified that when the matter was finally settled, L. Sessions was there in the courtroom; that he called him inside, "called him up there to the righthand corner of the Judge's bench and told him what the settlement was, and asked him if it was all right and if he wanted to make it, and he said he understood it." The attorney testified that all the terms of the settlement were discussed with L. Sessions and that L. Sessions knew the terms of the settlement as well as the witness.

The ultimate issue in the case as to the settlement is determined by the verdict. There may be a binding settlement by a compromise without a complete closing out of all pending matters. East Line & Red River Railroad Co. v. Scott, 72 Tex. 70, 10 S.W. 99, 13 Am.St.Rep. 758; Southern Oil Co. v. Wilson, 22 Tex.Civ. 534, 56 S.W. 429, in which there was some contention as to the proper construction of the term "current market price." The court held that such contention was not sufficient to warrant a holding that the compromise cannot be enforced on the ground that the minds of the parties did not meet and concur.

Every reasonable presumption is to be indulged in favor of a settlement made by an attorney duly employed and left free to make the settlement. Williams v. Nolan, 58 Tex. 708, 714.

The evidence will justify the statement that time was not the essence of the payment of the $200, it could be paid at once, or in the fall of that year with interest.

We note that plaintiff Applewhite bought the notes after maturity and with knowledge of the settlement of the matters of difference between J. M. Sessions and L. Sessions. The court gave plaintiff judgment for the $200 and the interest.

We have concluded that the trial court properly submitted the issues in the case.

We overrule the propositions complaining of the refusal of the court to give the requested special charges.

We have fully considered propositions not discussed, and have concluded they present no reversible error. They are each overruled.

The case is affirmed.