(No. 7021. September 15, 1942.)

TOM PICCIANO, doing business as Pocatello Meat Company, Respondent, v. RALPH D. MILLER and FLORA MILLER, his wife, appellants.

[137 Pac. (2d) 788.]

On Rehearing May 21, 1943.

L. E. Glennon for appellants.

C. V. Boyatt and Anderson, Bowen & Anderson for respondent.

GIVENS, C.J.—Respondent, under the name "Pocatello Meat Company", engaged in buying, butchering, and selling livestock, employed appellant Ralph D. Miller, from November, 1933 to December, 1938, as a butcher, salesman, and collector (Miller furnishing his own automobile) at $15 a week, increased March, 1934, to $22.50 a week or $100 a month. Appellant contends that from about the latter date they were partners and were to divide the profits of the business, estimating his share at $50 a week. Respondent contends there was no partnership, merely the above contract of employment, and that appellant unlawfully appropriated to his own use out of the business $6371.50. January, 1935, appellant purchased a house and lot in Bannock County for $1550, $50 down, balance in installment payments after June, 1935, of $20 per month, 7% on deferred payments, and payment of taxes and insurance, and placed $2000 of improvements thereon, occupying it as his residence.

Respondent sued for the $6371.50 and to impress there-

for a trust upon the house and lot. The court found appellant had abstracted $4538.10, which went into the purchase of the house and improvements, and impressed thereon a lien for said sum in favor of respondent; hence, this appeal.

The court found on sufficient, though conflicting, evidence that there was no partnership; hence, appellant was entitled to only a $100 a month salary. The evidence discloses the further situation with regard to his receipts and expenditures: from his salary for the four years he received $4800. He borrowed $200 from respondent and $621.64 from W. S. Berger. Appellant testified he had no other income and had no property except his automobile at the time he entered respondent's employ. His legitimate receipts thus amounted to $5621.64. He paid $1550 for the house, putting $2000 in improvements thereon. He paid $267.65 interest on deferred payments, making a total of $3817.65, leaving $1803.99, or an average of $37.58 per month for the four years with which to pay the living expenses of his wife and himself, taxes and insurance on the property purchased, and expenses of his automobile in connection with the business, which appellant stated he used more or less constantly in making deliveries and collections, and to pay interest on $1368.73 from October to December, 1938.

While the court found appellant had abstracted $4538.10, this amount should be reduced by $1050, made up of these uncollected accounts: $550 on McReynolds, $350 on the Lea Grocery, and $150 from one Meyer. There is no evidence to show appellant was to be responsible for uncollected accounts, and the evidence is too conflicting and unsatisfactory to hold that these amounts were eliminated from the accounting of the two experts employed by respondent.

Appellant contends no part of this $3488.10 was traced as having gone into the purchase of the house or the payment of the improvements thereon, relying on *Martin v. Smith,* 33 Ida. 692, 197 P. 823, and *Cox v. St. Anthony Bank & Trust Co.,* 41 Ida. 776, 242 P. 785. Some authorities hold that where purloined money has been so inextricably mixed and confused with the taker's own money that no segregation can be made there can be no trust. (*Ferris v. Van Vechten,* 73 N. Y. 113; *Barger v. Barger,* 30 Ore. 268, 47 P. 702; *Grote v. Service Finance Corp.,* (Tex.) 119 S. W. (2d) 136.) On the other hand, while recognizing that some portion at least of the funds must be traced, other courts hold as follows:

"It is also a well established rule of law that, while the burden is on the party whose property has been misappropriated by a trustee to trace and identify his property either in its original or substituted form, yet, when he has succeeded in doing this, if it is shown that property belonging to the trustee is represented in the property impressed with the trust, then the burden is cast upon the trustee to show what his interest is, and, if he is unable to do so, the whole will be considered trust property. 28 A. & E. Ency. L. 1120, and cases cited. Plaintiff, having shown that at least some of the trust fund was used in making each of the payments above mentioned, the burden was upon Waddell, if any of his own money was used in connection with the trust fund in making these payments, to show how much; and, having failed to do so, each payment will be deemed, as between these parties, to have been made with trust funds only." (*Waddell v. Waddell*, 36 Utah 435, 104 P. 743.)

And see *Spencer v. Pettit*, (Tex.) 17 S. W. (2d) 1102.

While there must be tracing of the funds, the latter rule is the correct rule for the reason that the person who has taken the money should not escape the consequences of his illegal acts merely by the confusion caused by him and for which he alone is responsible. Otherwise, the person taking the money could always escape reimbursement by merely mixing the funds and thereby acquire all of the ill-gotten gains.

While appellant might contend that all of the purloined money went into the living expenses and that he used only the money he received legitimately to pay upon the house, it was a reasonable deduction for the trial court to make that some part of the purloined money went into the purchase and improvement of the real property. Hence, there was sufficient tracing to bring the case within the last rule above noted.

 Appellant urges as error the admission of plaintiff's exhibit "A", consisting of the records and sales slips of the business during the four years in question, largely kept by appellant. The only objection made was as follows:

"I don't think the exhibit has been properly identified, or verified to entitle it to admission. If they have an audit based on them it seems to me that would be the best evidence and more satisfactory to the court."

An audit based upon these records, made by Jordan, who

testified as a witness and was subjected to extensive cross-examination, was later introduced. Considering that these records were largely kept by appellant and the nature of the objection, no error was committed in their admission. The audit as prepared by the accountant, exhibit "C", was properly admitted. Exhibits "D" and "E", being certain pertinent figures, were in appellant's own handwriting and therefore admissible against him.

This disposes substantially of all appellants' assignments of error, and the judgment, as modified by the reduction noted, is affirmed.

No costs allowed.

Budge, Morgan, and Ailshie, JJ., concur.

Holden, J., dissents.

On Rehearing.

(May 21, 1943.)

DUNLAP, J.—The decision of this court herein was written and filed September 15, 1942. Thereafter, upon petition of appellants, a re-hearing was granted and the case was re-argued at the Pocatello term on the 31st day of March, 1943.

As a result of the rehearing, I am convinced the trial court erred in the findings to the effect the sum of money alleged and found by the trial court to have been abstracted by appellant Miller from respondent, was used to purchase the real property involved in this action and used to improve said real property, and that the amount of the judgment in favor of respondent and against appellants should be, and constitutes a specific lien on the real property involved in this action with the right of respondent to foreclose such lien, and I think the judgment of the trial court should be modified in accordance with this conclusion. The evidence does not sustain these findings.

It was respondent's duty, under the law, to trace this money which he claimed to be a trust fund, to the specific property. The authorities are to the effect it is the duty of the beneficiary of a trust or a claimed trust, to trace the money into the specific property where he would impress that property with the trust funds. This rule is stated in 65 C. J., p. 965, Sec. 889, as follows: "The right to·follow trust property in equity being based on the theory that a right of property still exists in the cestui que trust, the

equitable right of recovery or reclamation generally does not exist, or no trust or lien can be enforced if the trust property cannot be identified, or traced into some specific fund or thing, which is sought to be charged, and into which the original trust property has gone in some form or other." (See also 61 C.J., p. 968, Sec. 891, p. 978, Sec. 902, p. 963, Sec. 688.)

■ There is nothing in the record to show from where Miller received the money for the purchase and improvement of the property involved. Therefore, no part of the trust fund was traced into this particular piece of property. The conclusion that the money was traced into the property is evidently based on inference, that inference being that as Miller bought the property and it did not appear he purchased it with funds he had acquired otherwise, it would therefore follow that he used the trust money for that purpose. In matters of this kind, no presumption whatever can be indulged in by the courts. The rule is announced in Pomeroy's Equity Jurisprudence, Vol. 2, Sec. 422, p. 184, as follows:

"A court of equity, in order to raise a resulting trust, will not assume from the mere fact that the purchaser had or might have had trust moneys in his hands, that he used them in paying for the property purchased, in the absence of evidence clearly showing such use by him."

The question of the sufficiency of identification of a trust fund is discussed in 26 R. C. L., Sec. 219, p. 1355, wherein it is stated: "As to what is a sufficient identification of a trust fund when it is attempted to show that it remains a constituent part of the assets of an insolvent trustee's estate, it was at one time held by the courts of some of the states to be unnecessary that the misapplied trust funds or proceeds of the trust property should have actually come into the possession of the executor, administrator, receiver, or assignee; not essential that it should be traced into the estate; * * * Most if not all of these cases have, however, been overruled or greatly limited and qualified and the generally accepted rule at the present time is that it must appear that the trust property or its proceeds have found their way directly into the estate of the trustee, that the property must be found to reside in the assets at the time when the claim is asserted, and must not have been expended or dissipated for any purpose in

the business of the trustee." (See also 26 R. C. L., Sec. 218, p. 1354.)

█ The rule applicable to the facts in this case is clearly stated in Jones on Liens, 3rd Ed., Vol. 2, p. 172, Sec. 1179, as follows: "Trust funds which have been misapplied by the trustee to the purchase of lands in his own name may be declared a lien upon such lands; but it must be clearly proved that the trust funds were invested in the lands. It is not sufficient to show that the trustee was in possession of the funds, and while in possession of them he purchased and paid for the lands; *for in such case no presumption arises that the lands were purchased with such funds.* If the trust money has been mingled with other moneys of the trustee so as to be indistinguishable, and the trustee has made investments generally with the moneys in his possession the cestui que trust cannot claim a specific lien upon the property or funds constituting the investments." (Italics mine.)

What appears to be a leading case on this question, the same being cited in the several texts above referred to, is the old case of *Ferris v. Van Vechten*, 73 N. Y. Reports, beginning page 113 (decided in 1878), and we quote therefrom a portion of the opinion, beginning page 119, as follows, to-wit: "To follow money into lands, and impress the latter with the trust, the money must be distinctly traced and clearly proved to have been invested in the lands. While money, as such, has no earmark by which when once mingled in mass it can be traced, it is, nevertheless, capable under some circumstances of being followed to, and identified with, the property into which it has been converted; but the conversion of the trust money, specifically, as distinguished from other money of the trustee, must be clearly shown. It does not suffice to show the possession of the trust funds by the trustee, and the purchase by him of property—that is, payment for property generally by the trustee does not authorize the presumption that the purchase was made with trust funds. The product of, or substitute for, the original trust fund follows the nature of the fund as long as it can be ascertained to be such; and if a trustee purchase lands with trust money, a court of equity will charge them with a resulting trust for the person beneficially interested. But it must be clear that the lands have been paid for out of the trust money."

The testimony relied upon by respondent in support of

his claim that this trust money was traced into the trust property, is abstracted in respondent's brief, beginning at the bottom of page 15 and continuing through the middle of page 17. This testimony does not, in my opinion, trace the alleged abstracted funds into the trust property. The authorities relied upon by respondent in this respect are listed at the top of page 25 of respondent's brief and I do not find they are in point on the precise question under consideration, to-wit: The question of the necessity of actually tracing the trust fund or some portion thereof, into the so-called trust property. The authorities cited are not contrary to the rule set out in the authorities which are hereinabove quoted.

Had there been a tracing of any part of the trust money into the property in this case, then, of course, the rule from *Waddell v. Waddell*, 36 Utah 435, 104 P. 743, quoted in the original opinion, would have been applicable. That rule is not in conflict with the rule placing the burden on one who would impress property with a trust to show that some portion at least, of the trust funds went into the property. Had that been done in this case, then the burden would have been upon appellant Miller to have shown that his own money or at least some portion thereof, had gone into the trust property, but due to the failure of respondent to trace any portion whatever of the so-called trust fund into the property, no such burden shifted to or was placed upon appellant Miller. There was a conflict in the evidence on the question of whether or not Miller actually purloined or abstracted trust funds belonging to the respondent, and the trial court found that he did. Under these circumstances, those findings, as they are supported by the evidence, are binding on this court.

I am in accord with that part of the first opinion holding that the judgment of the trial court should be reduced by $1050.00 for the reasons therein stated.

The judgment of this court should be, and is modified in accordance with these views and this case should be, and is remanded with instructions to the trial court to enter judgment in favor of respondent and against appellants for the sum of $3488.10, plus statutory interest, without specific lien, without costs to either party.

No costs awarded to either party on this hearing.

Holden, C.J., concurs.

BUDGE, J., concurring—After a careful reexamination of the record, briefs, and authorities cited by respective counsel, and further independent investigation, I am convinced that the original opinion heretofore filed should be modified as and to the extent set out in the opinion written on rehearing by Justice Dunlap, in which I concur.

Ailshie and Givens, JJ., adhere to the original opinion.