206 P.2d 774

**REYNOLDS IRR. DIST. v. SPROAT et al.**

No. 7384.

Supreme Court of Idaho.

March 27, 1948.

On Rehearing May 17, 1949.

E. G. Elliott and Edwin Snow, both of Boise, for appellants.

Smith & Ewing and Dunlap & Dunlap, all of Caldwell, for respondent.

MILLER, Justice.

This action was commenced April 5, 1946, by the Reynolds Irrigation District, a quasi-municipal corporation of Owyhee County, State of Idaho, as plaintiff against Ellen T. Sproat and Hugh Sproat, husband and wife, as defendants, for the purpose of perpetually enjoining, restraining and estopping the defendants, and each of them, from using a certain ditch for conveying water to their land, or from cutting, obstructing or interfering with the use of said ditch, or from diverting any water therefrom. April 16, 1946, defendants filed a demurrer to the complaint in which it was alleged that the complaint did not state facts sufficient to constitute a cause of action against the defendants or either of them and that it was ambiguous, unintelligible and uncertain in that it may not be determined from the allegations thereof what water or water rights, if any, plaintiff is attempting to claim, their source, volume, or what land, if any, to which they may be ap-

purtenant. The demurrer was overruled. May 6, 1946, the defendants filed an amended answer and cross-complaint. The amended answer denied generally the material allegations of the complaint. The cross-complaint alleged that at the time work was commenced on the ditch described in plaintiff's complaint, one John Keith, predecessor in interest of plaintiff, entered into an agreement with defendants to acquire a right-of-way for said ditch over and through the lands of defendants for a distance of approximately one mile, and as the sole consideration therefor contracted and agreed with defendants and granted to them therefor a perpetual interest to said ditch to the extent necessary to carry their water to their said lands. That said right-of-way was acquired by said John Keith, and his successor, the plaintiff, and the defendants' joint interest in and to said ditch was completed on or about April 1934, and ever since said time defendants have claimed and used said ditch under and by reason of their said legal rights and ownership and ever since 1934 have openly, notoriously and publicly so used said ditch and have conveyed their said waters from said ditch to their said lands for irrigation purposes; that with full knowledge of said John Keith until he died in 1938, and, at all times with full knowledge and notice of said plaintiff, defendants have claimed and used said ditch and said waters.

May 9, 1946, the plaintiff filed an answer to defendants' cross-complaint in which it denied the allegations and each of them, contained therein and prayed that defendants take nothing thereby and for judgment as prayed for in its complaint.

May 22, 1946, defendants filed an affidavit of bias and prejudice of the trial judge, Hon. A. O. Sutton, under the provisions of Chapter 218, of the 1933 Session Laws, and June 5, 1946, the Hon. A. O. Sutton made and filed an order transferring the cause of action to the Hon. Thomas E. Buckner, an associate district judge of said judicial district.

July 8, 1946, attorney for defendant was notified by counsel for plaintiff that application would be made to have said cause set for trial on July 23, 1946, counsel for defendant did not appear.

July 18, 1946, an affidavit of bias and prejudice by Hugh Sproat, one of the defendants, in which it was stated, as he verily believed, that defendants could not have a fair and impartial trial of the above entitled cause before the Hon. Thomas E. Buckner for the reason that said judge was biased and prejudiced against affiant.

July 23, 1946, the cause having been set down for trial on said date, the plaintiff appeared by counsel, and defendants did not appear either in person or by counsel, and having filed herein their affidavit and motion of continuance and affidavit of bias and prejudice of the judge and the plaintiff having filed counter-affidavits, the court heard argument of plaintiff's counsel and

ordered the defendant's motion, under the affidavit of bias and prejudice of the judge, be denied and the court granted defendant's application for continuance until September 23, 1946.

October 21, 1946, the cause came on for trial and was concluded October 22, 1946. February 8, 1947, the court made and filed its findings of fact, conclusions of law and judgment and decree.

May 1, 1947, the defendants filed their notice of appeal to this court.

The plaintiff, Reynolds Irrigation District, alleges that as a part of its irrigation system it is the sole owner of a certain ditch used by plaintiff for the diversion from Warm Springs Creek, located in Canyon County, Idaho, waters appurtenant to the lands within its irrigation district located in Owyhee County, Idaho; that said ditch has its head in Sections 9 and 10, Township 1 South, Range 2 West of the Boise Meridian, Canyon County, Idaho, at what is commonly known as Warm Springs and sometimes as Sproat Springs and runs in a southwesterly direction through a portion of Sections 8 and 9 of Township 1, South, Range 2, West of the Boise Meridian, Canyon County, Idaho, and crosses the Snake River at Walter's bridge; that none of the lands within the boundaries of said irrigation district are located in either of the sections, above mentioned, or in any part of Canyon County, Idaho.

From the findings of fact it appears that all the material allegations of the complaint are established by oral and documentary proof and the cause having been submitted to the court for its decision, the court holds as conclusions of law under the findings of fact, as follows:

"That the above named plaintiff, Reynolds Irrigation District, a quasi-municipal corporation of Owyhee County, State of Idaho, is entitled to a judgment and decree of this court that it is the sole owner of that certain irrigation ditch described in the complaint on file herein and built by it and which is partially located in and intersects the Southeast Quarter of the Southeast Quarter and Lot 1 of Section 8, Township 1 South, Range 2 West of the Boise Meridian, and each and every part thereof; and that the defendants, nor either of them, have no right, title, claim or interest in and to said ditch or in and to any part or portion thereof, or to the use thereof, and quieting the title of the plaintiff in and to said ditch, and each and every portion thereof, as against the defendants, and each of them; and perpetually enjoining and restraining the defendants, and each of them, from damaging, breaking or tapping said ditch, or any part thereof, and from diverting into and from said ditch any water whatsoever for any purpose, and from putting checks in said ditch or otherwise impeding the flow of water therein and from in anywise using or attempting to use the said

ditch, and for plaintiff's costs and disbursements herein incurred."

By the judgment and decree it is ordered, adjudged and decreed, among other things, that the plaintiff was at the time at the commencement of this action, and now is, the sole owner of, in possession and entitled to the exclusive possession of that certain ditch built by it for conveying water to the lands within the boundaries of an irrigation district located in Owyhee County, Idaho, and which ditch is partially located in the intersection of the Southeast Quarter of the Southeast Quarter and Lot 1 of Section 8, Township 1 South, Range 2 West of the Boise Meridian, Canyon County, Idaho; that the defendants herein and each of them, and all persons claiming under them, or either of them, have no right, title, claim, estate or interest whatsoever in and to said ditch, or any portion thereof and they are forever perpetually debarred, foreclosed and enjoined from asserting any right, title, claim, estate or interest whatsoever in and to said ditch, or any portion thereof, and are perpetually enjoined and restrained from damaging, breaking or tapping said ditch, or any part thereof, and from diverting into or from said ditch, or any part thereof, any water whatsoever for any purpose and from putting checks in said ditch or otherwise impeding the flow of water therein and from in anywise using or attempting to use any water from said ditch. That the title of the plaintiff, Reynolds Irrigation District, in and to said ditch, and the right to the exclusive use of said ditch, is hereby adjudged and decreed to be good and valid and hereby quieted against any and all adverse claims and pretentions of the defendants herein, and against all persons bound and affected by this decree.

*It is admitted that the only question* involved is the ownership of the aforementioned ditch by appellants and whether respondent is entitled to an injunction against appellants, enjoining and restraining them from using said ditch or any portion thereof.

Appellants submit 19 specifications of error, wherein it is asserted the manner in which the trial court erred.

Appellant's specification No. 1 asserts that the court erred in overruling appellant's demurrer to respondent's complaint. It is not stated wherein the complaint fails to constitute a cause of action. Paragraph 2 of said demurrer states that the complaint is ambiguous, unintelligible and uncertain in that it may not be determined therefrom what water or water rights, if any, plaintiff is attempting to claim, their source, volume, or what land, if any, they may be appurtenant to, or, whether said land is arid in character and requires artificial irrigation. We think the reasons set out as to why the complaint is ambiguous, unintelligible and uncertain is sham and unresponsive for the reason that plaintiff is not attempting to prove or establish any water rights, their source,

or volume, or as to what specific land the same may be appurtenant.

Specification No. 2 asserts that the court erred in its finding No. 3, "that plaintiff was the sole owner of the irrigation ditch involved in this action."

Plaintiff's Exhibit "D" is an instrument entitled Grant of Right of Way, dated May 8, 1933, executed by Ellen T. Sproat and Hugh Sproat. It recites that the appellants " *  *  * for and in consideration of one dollar and other valuable considerations to them in hand paid by the Reynolds Irrigation District of Owyhee County, Idaho, hereinafter called the second party, the receipt whereof is hereby acknowledged do hereby grant to the second party a perpetual right-of-way and easement upon, over and across the Desert Land Entry of the said Ellen T. Sproat consisting of the W½ of SW¼ of Sect. 9, SE¼ of SE¼, and the NW¼ of SE¼ and Lots 1, 2 and 3 of Sect. 8 in Township 1 S. R. 2W. in Canyon County, Idaho, for the construction, maintenance and repairs of the ditches, * * * and we do hereby waive any and all claims for damages that may accrue to either of us by reason of the construction and maintenance of said irrigation works to, over and across said premises."

Plaintiff's Exhibit "E" is an agreement, dated March 8, 1937, between Reynolds Irrigation District, a corporation, party of the first part and Ellen T. Sproat and Hugh Sproat, wife and husband, parties of the second part, wherein, among other things, it is said, to-wit:

"Whereas, the parties of the second part desire permission to convey certain waste water appropriated by them for irrigation purposes, and surplus waters unappropriated, through a portion of the ditch owned by the said Reynolds Irrigation District.

"Now, therefore, this agreement witnesseth: That the party of the first part does hereby agree that it will permit the said parties of the second part, at such time or times as may be convenient to the said party of the first part, to convey such amount or amounts of water through the ditch belonging to the first party, from the point in Section Nine (9) where the old ditch of the second parties would intersect the ditch belonging to the first party, and to such point on said ditch in Section Eight (8), which will hereinafter be designated by a headgate and weir. * * *

"Parties of the second part agree that they will, at all times, obtain the consent of Board of Directors of Reynolds Irrigation District for the conveyance of said water and will, at all times, abide by the decision of said Board as to the amount of water to be conveyed and the measurements made by the ditch rider at said headgate and weir.

"Parties of the second part agree that they will not, at any time, attempt to convey any water through said ditch without

first obtaining the necessary consent of the Board."

It is argued by appellants that Exhibit "E" is strong evidence in support of appellant's contention that they have a right to use the ditch in question, because said exhibit was not executed by respondent and the interlineations were made by Mr. Sproat. Regardless of such matters the appellants disclose thereby whom they considered to be the owner of the ditch, i. e., "the ditch owned by the Reynolds Irrigation District," and that they would "at all times, obtain the consent of the Board of Directors of Reynolds Irrigation District." Any use of the ditch without obtaining permission would be a trespass and ineffectual in establishing any rights therein.

Respondent's witnesses Ednie, Backman, Mahan, and Bailey, testified substantially to the same matters as contained in Exhibits "D" and "E," that is, that respondent had built and owned said ditch and that the appellants had no right, title, interest, claim or demand therein.

Specification No. 3 asserts that the court erred in its finding No. 4, to the effect that defendants "had no right to the use of said ditch." The same proof applicable to specification No. 2, applies with equal force to finding No. 4, in that Exhibits marked "D" and "E," heretofore referred to, show· that appellants had no right to the use of said ditch, except through the permission of the Board of Directors of respondent.

Specification No. 4 asserts that the court erred in its finding No. 5, to the effect that appellants had "certain possessive rights" to the land therein described because the undisputed proof is that they own said land under a United States Desert Entry. We think it is wholly immaterial as to the source of the title to said land. Respondent claims no right or title therein and the source of the ownership is not involved.

Specification No. 5 asserts that the court erred in its finding No. 6, and to the effect that defendants had no right, title, claim or interest in said ditch, and had without right, since August, 1945, used said ditch for carrying and diverting therefrom water for the irrigation of their lands. A reference to the record, particularly the testimony of witness Bailey, as well as that of the appellant Sproat, discloses that the court did not err in its findings in said specification.

Specification No. 6 asserts that the court erred in its finding No. 7, to the effect that plaintiff has used the waters flowing in said ditch for the irrigation of lands within its district. That said lands require the entire capacity of said ditch for the successful irrigation thereof. We will refer to said specification hereinafter.

Specification No. 7 asserts that · the court erred in its finding No. 8, to the effect that plaintiff had no plain, speedy

or adequate remedy at law. There is nothing in connection with said specification that points out any reason, in the absence of proof, that plaintiff had a plain, speedy or adequate remedy at law. There was proof to the effect that appellants were using the ditch without permission from respondent and, likewise, to the effect that appellants threatened the continued use thereof and that they would continue to check the flow as their needs required.

Specification No. 8 asserts that the court erred in its finding No 10, to the effect that prior to the time work was commenced on the ditch described in plaintiff's complaint, one John Keith did not enter into any agreement with defendants to acquire any right-of-way for plaintiff's ditch over and through the lands of defendants and did not contract or agree with defendants and would not grant them therefor any perpetual or any other interest in plaintiff's said ditch to the extent necessary to carry defendants' water to their said lands and that defendants never acquired, retained or owned any legal right to the use of said ditch or used the same without permission of plaintiff up to about the month of August, 1945, and since said time defendants use of said ditch has been unlawful and without right.

Specification No. 9 asserts that with the exception of one slight matter the court erred in its conclusions of law and to each and every part thereof.

Specification No. 10 asserts that the court erred in making and entering its decree in favor of respondent and against appellants.

Specification No. 11 asserts that the court erred in overruling appellants' demurrer.

In specifications numbered 6, 9, 10 and 11, there is no reason assigned as to how, or in what manner the court erred. In the case of Andrews v. Grover, 66 Idaho 742, 168 P.2d 821, 824, it is said:

"We take this occasion, however, to advise that said purported assignments failed to conform to the requirements of Rule 52, in that they are too general. As stated in Burton v. Bayly, 50 Idaho 707, 300 P. 359, 360:

" 'None of the assignments of error point out in what particulars the court erred and, therefore, do not comply with the requirements of Rule 40, requiring appellant's brief to contain a distinct enumeration of the errors relied upon. General statements specifying that the court erred (authority) or that the evidence is insufficient to sustain the findings, verdict, or judgment (numerous authorities), without pointing out the particulars of the insufficiency, are too indefinite to merit consideration by this court on appeal.'

"See, also, Kootenai County v. Kinman, 56 Idaho 1, 47 P.2d 887; Slusser v. Aumock, 56 Idaho 793, 59 P.2d 723, 725, in which it is said:

" 'General assignments specifying that the court erred, or that the evidence is insufficient, without pointing out the particulars of insufficiency, are too indefinite to merit consideration.' "

Specification No. 12 asserts that the court erred in refusing to sustain appellants' motion for disqualification of Judge Thomas E. Buckner and in proceeding to the trial of this cause when said judge was disqualified by appellants' affidavit of bias and prejudice.

May 22, 1946, A. O. Sutton, one of the judges of said court, before whom the action was pending, was disqualified by defendants under the provisions of Paragraph 4 of Section 1-1801, I.C.A., as amended by Chapter 218, Session Laws 1933. June 5, 1946, Judge Sutton made an order transferring said action for further proceedings to the Hon. Thomas E. Buckner, the other judge of said judicial district. July 18, 1946, an affidavit of disqualification was filed by Hugh Sproat in said action for the disqualification of Judge Buckner, one of the judges of the district in which the action was commenced.

We think there is no merit in appellants' contention. In the case of Home Owners' Loan Corporation v. Stookey, 59 Idaho 267, 81 P.2d 1096, 1098, in dealing with said identical question this court said:

"Of course, a party who has disqualified one judge, by affidavit that he has reason to believe and does believe he cannot have a fair and impartial hearing or trial before said judge, becuse of his bias and prejudice, is not required to go to trial before another judge who is actually biased and prejudiced against him. Art. 1, sec. 18, forbids that. However, the act granting the right to a change of judges, by affidavits such as appellants filed, permitted them to disqualify only one judge by that method. If they desired to disqualify another one, it was necessary that they not only allege the conclusion of prejudice, but set out the facts showing it."

Specification No. 13 asserts that the court erred in not making a finding of fact on the allegations contained in Paragraph 3 of appellants' cross-complaint, alleging that respondent's main water right was in Reynolds Creek and sufficient to irrigate said lands until June 1st of each year. The subject matter therein contained is foreign and immaterial to the question involved in respondent's complaint, the ownership of the ditch. We fail to find anything in the record wherein appellants requested any such finding and, under the circumstances, we think the court would not have been justified in such a finding even though requested by appellants. In the case of Strahorn v. Ellis, 66 Idaho 572, 165 P.2d 294, 298, it is said:

"The trial court did find that the appellants were not entitled to any relief whatever under or by virtue of their cross-complaint. Any finding in that connection based upon the record would have been

adverse to appellants. As stated in the case of Marysville Development Company v. Hargis, 41 Idaho 257, 239 P. 522, 523, ' "A judgment will not be reversed for want of a finding by the lower court, unless it appears from the record that there was evidence before the court from which it was required to make a finding which would countervail its other findings." ' In the case of Fehr and Harbert v. Haworth, et al., 33 Idaho 96, 190 P. 248, it is said: 'Findings of fact are to be liberally construed in support of the judgment, especially in the absence of request made to the trial court to make its findings more definite and certain.' Likewise, in the case of Brown v. Macey, 13 Idaho 451, 90 P. 339, 341, it is said:

" 'And yet if the issues thus made are not material and substantial and do not constitute a defense to the plaintiff's action, then certainly findings thereon could not affect the judgment of the court one way or the other. In other words, whether the court find the allegations of the answer true or false would make no difference in the final judgment entered upon the allegations of plaintiff's complaint. Viewed in this light, there would be no error in failing to find upon such issues if in fact they are not material and do not constitute a legal defense to the plaintiff's action.' (See, also, Bowers v. Cottrell, 15 Idaho 221, 96 P. 936; Montpelier Milling Co. v. City of Montpelier, 19 Idaho 212, 113 P. 741.) * * *

"In the case of Koon v. Empey, 40 Idaho 6, 231, P. 1097, it is said:

" 'Findings are ordinarily required on all material issues, but the trial court is not required to make findings on issues not sustained by the evidence and upon questions unnecessary to the determination of the cause.' See, also, Harris v. Chapman, 51 Idaho 283, 5 P.2d 733."

Specification No. 14 asserts that the court erred in sustaining respondent's objection to the following question asked by appellants' counsel of witness Bachman, "What did the Reynolds Irrigation District pay the Sproats for the ditch from the third bend in your ditch for the next quarter of a mile?" The objection was on the ground that it was incompetent, irrelevant and immaterial and not proper cross-examination and not the best evidence. Appellants did not point out wherein the court erred in this particular or point out in what respect the case was prejudiced by the ruling. Furthermore, it has nothing to do directly with the ownership of the ditch and it is quite unlikely, even though it did, that a witness could give any statement as to what was paid for a portion only of the ditch.

Specification No. 15 asserts that the court erred in admitting plaintiffs' Exhibit "E" over appellants' objection. 31 C.J.S., Evidence, § 284, says:

"A written statement is none the less competent as an admission because it is contained in a document which is not itself

effective for the purpose for which it was made, either by reason of illegality, or the incompetency of a party thereto, or by reason of being not signed, executed, or delivered." Fidelity Reserve & Loan Co. v. Lincoln County Logging Co., 144 Or. 45, 23 P.2d 905, and also Kansas City Life Ins., Co. v. Harroun, 44 Idaho 643, 258 P. 929."

Specification No. 16 asserts that the court erred in sustaining respondent's objection to the following question asked by appellants' counsel of Hugh Sproat, "did or did I not ask Mr. Bachman why the district had not signed it" (Plaintiffs' Exhibit "E"). The question was objected to as incompetent. The witness answered "you did." The court sustained the objection, and motion to strike the answer should have been interposed. However, the question is wholly immaterial and, even though the answer were to stand, would be ineffective.

Specification No. 17 asserts that the court erred in sustaining respondents' objection to an alleged offer made by appellants for the actual consideration for the right-of-way for a ditch easement conveyed by appellants to respondent. Exhibit "D" to which the inquiry ran is the document by which appellants conveyed the right-of-way for an easement for the ditch. Appellant Sproat stated that the valuable consideration other than the dollar, ·"which was never paid", was the right to put water into their ditch and take it out. There is no dispute but what appellants had a right to put water into their ditch and to take it out, provided they secure permission for so doing from the proper officers of the respondent. The witness stated, "appellants both signed and acknowledged said Exhibit" and for the witness to say, "that is not the agreement, Mr. Wyman, between John Keith and myself" would not be permissible as tending to alter the terms of a written instrument.

In the case Marks v. Twohy Bros. Co., 98 Or. 514, 194 P. 675, 680, and supported by numerous authorities in the decision, we find the following:

"In the case of a conveyance like the one under consideration from plaintiffs to the Ochoco irrigation district, where the grantors, or one claiming under them, attempt by contradicting the consideration clause, to defeat the operation of the deed, or to lessen the force or effect thereof, or to incorporate therein a reservation of a right or interest in the property conveyed, which reservation is not enumerated in the conveyance, such parol or extrinsic evidence is inadmissible to vary, contradict, enlarge, or diminish such deed. * * *

"If the grantors, under the guise of varying the monetary consideration, can ingraft new terms into the instrument by parol evidence, and reserve to themselves the right to the use of the Table Land ditch during the season of 1918, they could in the same manner reserve to themselves the right to its use for a longer period of

5 or 50 years, or defeat the purpose of the conveyance.

"Stated in general terms, a purely money consideration, mentioned in a written instrument, which is complete upon its face, cannot be amplified by parol evidence so as to ingraft into the instrument an additional executory or contractual consideration. Where the written instrument appears to be perfect and complete, the terms of a contractual consideration cannot be contradicted or varied by parol."

In the case of Koeberle v. Hotchkiss et al., 4 Cal.App.2d 252, 40 P.2d 911; Halsey v. Minnesota-South Carolina Land & Timber Co., 174 S.C. 97, 177 S.E. 29, 100 A.L.R. 17; 22 C.J., p. 1119, para. 1480; 32 C.J.S., Evidence, § 910(c), the above court quotes with approval from the case of Lompoc Valley Bank v. Stephenson, 156 Cal. 350, 104 P. 449, as follows:

" 'Want of consideration or failure of consideration may be proved in a proper case, but, in the absence of fraud or mistake, parol evidence cannot be permitted to vary the terms of a written contract.' " [4 Cal.App.2d 252, 40 P.2d 912.]

In Vol. 32 C.J.S., Evidence, p. 787, § 851, we find:

"Rule of substantive law or of evidence. It has been asserted that the rule under discussion is one of evidence merely. However, according to the modern and better view, the parol evidence rule, as applied to contracts, is a rule, not of evidence or of evidence merely, but of substantive law, it being considered that parol evidence is excluded because the law requires the terms of the agreement to be found in the writing itself and not because of any reasons which ordinarily require the exclusion of evidence, such as some policy against its admission, or its untrustworthiness or lack of probative value."

Specification No. 18 asserts that the court erred in sustaining appellants' offer to prove a statement by John Keith, a director of respondent, to the effect that appellants were trading a right-of-way through their lands to respondent for the right to flow their waters through said ditch to their lands. It was objected to on the grounds that it was incompetent, irrelevant and immaterial. The objection was sustained. Appellants then offered to prove that John Keith, in December 1932, made such a statement to the witness Oscar Simpson. John Keith has been dead for approximately ten years. The evidence was incompetent, irrelevant and immaterial and, if made, would not be binding on the irrigation district as it is clearly hearsay and a statement made by a member of the board of directors is not proper evidence of a binding agreement with the district.

Specification No. 19 asserts that the court erred in its refusal to permit Roy W. Thompson of the Department of Reclamation of Idaho, and a witness for appellants, to testify to the amount of water

respondent was receiving from its source of water supply in Reynolds Creek. The supply of water from Reynolds Creek was not involved in the action and we take it that testimony to that effect would be entirely immaterial. It was objected to on the ground that it was immaterial and had nothing to do with the issue involved. In considering the matter it is said, "The Court: Isn't the question here, who owned the ditch." At folio 135 it is said: "The Court: What is the purpose of this, Mr. Elliott; The question before the court is, who owns the ditch."

Adverting to the testimony of Ralph Bailey, a witness for respondent, we have the following:

"Q. Are you acquainted with the ditches of the Reynolds Irrigation District shown on Plaintiff's Exhibit 'A.' A. Yes, sir.

"Q. State how long the Reynolds Irrigation District has used that ditch for the conveyance of water, if you know. A. It was built in the fall of 1933 and the spring of 1934.

"Q. Has it been used continuously by the Reynolds Irrigation District. A. Yes, sir.

"Q. Every year. A. Yes, sir.

"Q. Now you are acquainted with Mr. Sproat, the defendant in this action. A. Yes, sir.

"Q. Are you familiar with the lands indicated there on the map, Plaintiff's Exhibit 'A.' A. Yes, in a general way.

"Q. Did you have any conversation with Mr. Sproat in the year 1945 about the use of the Reynolds Irrigation District ditch, which has been indicated on the map Plaintiff's Exhibit 'A.' A. Yes, sir, I did.

"Q. Where did that conversation take place. A. It was over there by the ditch in the spring of 1945.

"Q. Who was present. A. Mr. Mahan.

"Q. What was said there. A. Well, Mr. Mahan and I put the water in the ditch and we met Mr. Sproat there and I told him we put the water into the ditch and we wanted him to let it alone. There was a little argument about he could check it and we told him we didn't want it checked, not to check it.

"Q. Did he say he was going to check it. A. He did.

"Q. And you told him not to. A. Yes, sir.

"Q. Is that the first time in the spring of 1945 that Mr. Sproat has used this ditch without the permission of the Reynolds Irrigation District. A. Yes, sir.

"Q. Did he as a matter of fact check the ditch after you told him not to. A. Yes; he said he did.

"Q. To what extent, if you know, during the year 1945. A. I don't know. He did it several times.

"Q. And that was over the objection and protest of yourself and other officers

of the Reynolds Irrigation District. A. Yes, sir."

The testimony of Mr. Sproat, one of the appellants, shows:

"Q. Now as a matter of fact, didn't the Reynolds Irrigation District build you a ditch through there for the irrigation of that tract. A. Later on they built a kind of a ditch.

"Q. They built you a ditch. What do you mean? A. I mean a ditch that was up and down hill and everything else.

"Q. They built it at your request. A. Along the bank of their ditch for a part of the way.

"Q. And that was to replace the ditch that you used to water the desert entry prior to the time that the Reynolds Irrigation District built their ditch there. A. You couldn't replace a ton truck with a wheel barrow. * * *

"Q. (By Mr. Dunlap) Do you mean to state you never asked any director of the district for permissive use of that ditch. A. I never did ask for permission of any of them. I have no use for a man that don't keep his word so I didn't ask them.

"Q. As a matter of fact you each and every year, you have gone to some officer of that irrigation system and asked them for permission to use that water. A. I did not.

"Q. Or their water. A. I did not, and there is no one that can stand up and say it.

"Q. Now as a matter of fact prior to your use of the ditch, didn't you proposition the irrigation district itself for the permissive use of that ditch. A. I did not proposition the district. My understandings were all with John Keith."

The trial court was the judge of the credibility of the witnesses and the weight to be given their testimony. In the case of Chatterton v. Luker, 66 Idaho 242, 260, 158 P.2d 809, 817, it is said:

"We think all that need be said relative to the evidence, or the sufficiency thereof, is governed by the following authorities:

"The recent case of Checketts v. Thompson, 65 Idaho 715, 152 P.2d 585, 586, wherein it is said:

"'This Court has repeatedly held that where conflicting evidence is submitted to a trial court sitting without a jury, either as a court of law or as a court of equity, the findings of the court on questions of fact will not be disturbed, where there is competent evidence to support them. Veil v. Summers, 35 Idaho 182, 209 P. 454; Davenport v. Burke, 30 Idaho 599, 167 P. 481; Lus v. Pecararo, 41 Idaho 425, 238 P. 1021; Collins v. Hibbard, 48 Idaho 178, 279 P. 619; Snell v. Stickler, 50 Idaho 648, 299 P. 1080; State v. Snoderly, 61 Idaho 314, 101 P.2d 9; Roddy v. State, 65 Idaho 137, 139 P.2d 1005; Picciano v. Miller, 64 Idaho 757, 137 P.2d 788; McCarthy v. Sauer, 64 Idaho 748, 136 P.2d 742.

"And again, in the case of Nelson v. Altizer, 65 Idaho 428, 144 P.2d 1009, 1014, it is said:

" 'Furthermore, where the facts "might very well lead different minds to reaching different conclusions upon the issue presented; · and where such is the case, however meager the evidence, if it is of a substantial nature and character (as in the instant case), the findings of the triers of fact should prevail." [Citing numerous authorities].'

"And, again, in the case of Wieri v. Anaconda Copper Min. Co., Mont., 156 P.2d 838, 841, it is said:

" 'On the review of a decision of the District Court the presumption is that the decree of that court is correct (citing cases), and that its judgment will not be set aside unless there is a clear preponderance of the evidence against it.' "

The trial court having determined from the record that there was no merit in appellants' contention; and that they had no ownership in the ditch in controversy, or a right to convey water through the same without securing permission from respondent, in which findings we concur, it is unnecessary to further consider the cause.

The judgment of the trial court is affirmed.

Costs to respondent.

GIVENS, C. J., BUDGE and HYATT, JJ., and STEVENS, District Judge, concur.

Before the rehearing granted by the court with the above personnel, could be heard, Judge BUDGE had voluntarily retired from the court, Justices MILLER and HYATT had resigned and Judge STEVENS had died.

Justice PORTER, by election, succeeded Judge BUDGE, and Justice TAYLOR succeeded Justice MILLER by appointment.

On Rehearing.

TAYLOR, Justice.

In addition to the facts appearing in the original opinion in this case, it should be stated that the ditch (the use of which is the subject of this suit) was constructed by the plaintiff district in 1933. It heads at, and diverts water from, Warm Springs in section 10, from whence it meanders through sections 9 and 8, and through section 17 where it is piped across Snake River, to the lands of the plaintiff. It crosses two 40 acre subdivisions of defendants' desert entry, the SW¼ SW¼ of section 9, and SE¼ SE¼ of section 8, and possibly crosses a corner of lot 1, section 8. The pipe line, which carries the water across the river, extends along most of the course taken through the SE¼ SE¼ in section 8. At the time this suit was commenced plaintiff was in

process of further extending the pipe line in that tract by means of three-foot concrete tile. The remainder of the course on defendants' land consists of open ditch. That part of the course, one mile or more in length, lying between the defendants' land and the head at Warm Springs is open ditch, except where it crosses Warm Springs Creek, from north to south, by means of a syphon. Through the years since 1933, the defendants have diverted water into the ditch some three quarters of a mile above their property, and on the north side of Warm Springs Creek. This water they have diverted from the ditch by means of a headgate and an open cut onto their land in section 8 below the syphon and on the south side of Warm Springs Creek.

The plaintiff brought this suit for an injunction against defendants' use of the ditch, and to quiet its title to the ditch. The decree granting the injunction and quieting title in the plaintiff, refers to the ditch as "said ditch, or any portion thereof," and as "said ditch, and each and every portion thereof." The plaintiff alleges that defendants "have as hereinafter pleaded diverted and threaten to continue to divert into and from that portion of plaintiff's said ditch located in the Southeast Quarter of the Southeast Quarter and Lot 1 of Section 8, Township 1 South, Range 2 West of the Boise Meridian, certain waters for use upon their said lands." This allegation is also incorporated in, and constitutes one of the court's findings of fact. It is the defendants' position that this limits the decree to that part of the ditch specifically described. However, the general course of the entire ditch is described, and reference made to it in other parts of the complaint, as "said ditch." And since defendants in their answer and cross complaint claim a right to use a part of the ditch lying outside their land, as well as that on their land, and since both parties upon the trial treated the issues as embracing all of the ditch used by defendants, the defect in the complaint has been waived.

As to that part of the ditch lying across defendants' property, they contend the decree denies to them their rights as owners of the servient tenement, under the rule adhered to by this court in Tomchak v. Harris, 54 Idaho 448, 32 P.2d 1025. The rehearing was granted upon this proposition. It is asserted by plaintiff, and denied by defendants, that this "theory of defense" was not presented to the trial court, and is urged the first time on appeal.

The defense pleaded was an oral agreement with plaintiff's predecessor by the terms of which the defendants conveyed to plaintiff a right of way in exchange for the right to use the ditch. Plaintiff's objection to the proof offered to establish this agreement was sustained on the ground that it would vary the terms of the written grant, by limiting or restricting the estate granted. The grant dated May 8, 1933, signed, acknowledged and delivered by the defendants is as follows:

"Grant of Right of Way

"Know All Men by These Presents:

"That Ellen T. Sproat and Hugh Sproat, her husband of Boise, Idaho, hereinafter called the first parties, for and in consideration of One Dollar and other valuable considerations to them in hand paid by the Reynolds Irrigation District of Owyhee County, Idaho, hereinafter called the second party, the receipt whereof is hereby acknowledged do hereby grant to the second part- a perpetual right of way and easement upon, over and across the Desert Land Entry of the said Ellen T. Sproat consisting of the W½ of SW¼ of Sect. 9, SE¼ of SE¼, and the NW¼ of SE¼ and Lots 1, 2 and 3 of Sect. 8 in Township 1 S. R. 2 W. in Canyon County, Idaho, for the construction, maintenance and repairs of the ditches, canals, pipe lines and other works in connection with its proposed irrigation system for the lands in the District in accordance with the survey and plans on file in the office of the second party and as the same may be hereafter changed during the course of construction, and we do hereby waive any and all claims for damages that may accrue to either of us by reason of the construction and maintenance of said irrigation works to, over and across said premises."

This document was produced at the trial, and offered in evidence by the plaintiff, and was admitted as "Plf's Ex D." There is nothing in the evidence produced by either party to impair this instrument. Except as further limited by the actual selection of the specific location and the construction of the ditch thereon, it stands as the source and limitation of the plaintiff's rights. In its complaint the plaintiff pleads that it "is the sole owner of a certain ditch" and "that the defendants have no right, title, claim or interest in and to the said ditch and to the right of the use thereof or any part thereof." Plaintiff offered no proof of such an exclusive ownership. But on the contrary by the exhibit "D" plaintiff established that it is not such an exclusive owner.

Where the proof on the part of the plaintiff tends to defeat or limit the relief prayed for, the defendant may take advantage of such proof even though it does not support the theory of the defense pleaded. This is just another way of saying that the plaintiff cannot have judgment for any other or greater relief than its proof entitles it to.

Plaintiff points out that exhibit "D" contains no specific reservation in the defendants. It needs none. That part of an estate not granted is reserved in the grantor. "It is not necessary that the right of the owner of the servient tenement to occupy and use his land be expressly reserved to him; it is reserved, unless expressly conveyed. 9 R.C.L. 797; 19 C.J. 978; Rolens v. City of Hutchinson, 83 Kan. 618, 112 P. 129." Coulsen v. Aberdeen-Springfield Canal Co. 47 Idaho 619, 277 P. 542, 546.

■ The grant here is of a simple easement to flow water across the land, and a secondary easement for maintenance and repair. All of the rest and residue of appellants' original estate remains in them. As owners of the servient estate they are entitled to use the land occupied by the ditch in any way and for any purpose not inconsistent with the easement. Coulsen v. Aberdeen-Springfield Canal Co., supra; 28 C.J.S., Easements, § 72, page 750; 17 Am.Jur. 993.

"The determination that appellants had no prescriptive right as such to use the ditch did not, however, dispose of all their rights to the use of the ditch, since they owned the servient tenement, West Coast Power Co. v. Buttram, [54 Idaho 318], 31 P.2d 687, and while thereby they had no right to make use of the easement in the way they did or in any manner that would interfere with the dominant estate, Hays v. De Atley, 65 Mont. 558, 212 P. 296; 19 C.J. 978; 9 R.C.L. 798; 9 Cal.Jur. 953, if the Pyke & Roscoe ditch as now constructed is capable of being used by appellants without injury to or interference with respondents' use of the ditch, or appellants may, without interference with or injury to respondents' use of the easement, enlarge or change the same, but without increasing the burden of maintenance or changing respondents' method of use, Colegrove Water Co. v. City of Hollywood, 151 Cal. 425, 90 P. 1053, 13 L.R.A.,N.S., 904, at appellants' own expense, so that appellants may with proper measuring devices carry their water therein, they have the right so to do." Tomchak v. Harris, supra [54 Ida. 448, 32 P.2d 1026].

It follows that the trial court's decree in so far as it attempts to quiet title in respondent to all rights in the ditch, and to enjoin appellants from making any use thereof whatever, whether such use constitutes an interference with or injury to respondent's rights, is in error.

■ It is apparent from the transcript that this case was tried by both of the parties, and the court, upon the theory that the paramount issue is the ownership of the ditch, and that the determination of that issue settles the question of the rights of the parties to its use. The defendants, in their amended answer and cross complaint, plead that plaintiff has another water right, separate from that which it claims from Warm Springs, sufficient for all of its needs up to June first of each year and in some seasons to a later date. That this other water comes from Reynolds Creek on the other side of the river and does not require the use of this ditch. Defendants also question plaintiff's title to the water it takes from Warm Springs through this ditch. These are extraneous issues, and the court properly rejected evidence offered to support them. The court will not step aside from the issue as to the rights of the respective parties to the use of the ditch involved, to determine the water rights of the

parties, or the amount of water required to irrigate their respective lands.

However, as to that part of the ditch built on defendants' land, the issues are as to whether or not defendants' use of it constitutes an injury to, or interference with, plaintiff's right under the easement, and, if so, as to whether or not defendants can use it without such injury or interference, by enlarging, or altering, or installing proper devices, at their own expense. Tomchak v. Harris, supra. To determine these questions the court must have evidence of the carrying capacity of the ditch as constructed and used by the plaintiff, and of the amount of water which plaintiff has customarily carried through it. In a case, such as this, where the grant is indefinite as to the particular location, width and character of the ditch to be constructed, the practical construction placed upon it by the parties fixes the limits of the burden imposed upon the servient estate, and is the measure of grantee's rights under the easement. Coulsen v. Aberdeen-Springfield Canal Co., supra. These issues were not determined by the trial court.

Referring now to that part of the ditch lying outside the boundaries of defendants' land, the question is as to whether or not defendants acquired a right, by agreement or otherwise, to use any part thereof. The objection to oral evidence offered by defendants to show what the "other valuable considerations" were, (which are thus alluded to in the grant, exhibit "D"), on the ground that such evidence would impair or limit the grant, could have no possible application to evidence of an agreement to exchange the easement for a right to use that part of the ditch outside of defendants' premises. Obviously the acquisition of a right in that part of the ditch could in no way limit or impair the written grant. Such an agreement would contemplate merely the exchange of an interest in one property for an interest in another. Therefore, in the absence of some other valid objection, the evidence offered so far as affecting that part of the ditch should have been admitted.

The defendants complain of the tiling of a portion of the ditch on their land by plaintiff, alleging that it is being done to deprive them of their right to use the ditch. There is no allegation by plaintiff as to the purpose of the tiling, and the cross complaint apparently does not seek to enjoin it. Assuming that it is being installed to prevent waste, or to increase the effective use of water, it is the policy of the law to encourage rather than discourage such measures. Big Cottonwood Tanner Ditch Co. v. Moyle, 109 Utah 213, 174 P.2d 148, 172 A.L.R. 175; I.C. section 42-101; Coulsen v. Aberdeen-Springfield Canal Co., supra; Basinger v. Taylor, 36 Idaho 591, 211 P. 1085. Among the other things mentioned, it is for the court to determine from proper evidence whether defendants can take water out through the

tile without injury to, or interference with, plaintiff's rights.

For the reasons stated in this opinion it is deemed best to remand the case to the trial court with instructions to vacate the judgment and decree entered, and to order a new trial. Accordingly, it is so ordered, with cost to appellants.

GIVENS and PORTER, JJ., and SUTPHEN and McDOUGALL, District Judges, concur.