237 P.2d 93

**SIMONSON et ux. v. MOON et al.**

No. 7726.

Supreme Court of Idaho.

Oct. 16, 1951.

Rehearing Denied Nov. 20, 1951.

Robert M. Kerr, Jr., Blackfoot, for appellants.

H. Wm. Furchner, Blackfoot, for respondents.

TAYLOR, Justice.

The plaintiffs (respondents) are the owners of the Northwest quarter of Section Thirty, in Township Four South, of Range Thirty-two, East of the Boise Meridian, in Bingham County, and 95.6 inches of water represented by 153 shares of stock in the Aberdeen-Springfield Canal Company. The defendants (appellants) Moon are the owners of the Northeast quarter of the Southwest quarter and Lot Three of the same section, bordering plaintiffs' property on the south, and 48.2 inches of water represented by 77.1 shares in the same canal. The defendants Wells are the owners of the West half of the Northeast quarter and the West half of the East half of the Northeast quarter of the same section, bordering plaintiffs' property on the east, and 39.4 inches of water represented by 63 shares in the same canal. The Low-Line Branch of the company's canal runs diagonally through plaintiffs' property in a northeast-southwest direction. The annexed plat portrays the relative location of the lands of the parties, the canal and ditches in question.

All three of the parties take their water for irrigation from the canal at point A. The plaintiffs use the ditch from A around

to D by cutting the banks, and by checks placed at various points between A and B. They also use the ditch B–E by use of cuts in the banks. Water for the Wells land is diverted at C and D. Water for the Moon land is diverted, by means of the ditch B–E, at point E, and also through the ditch B–Y–C–D, at point D. In an effort to improve their land the plaintiffs Simonson sought and obtained the approval of Moon to the elimination of another ditch which formerly extended from the main lateral at a point near X south to point F, and at that time they extended the ditch from E to F for Moons' use. They also extended the drain which runs through the Moon property and into the plaintiffs' lands from the south, so that it cuts through the main

lateral at point X, and extends to the north. In this operation the lateral at X was removed and the water conveyed across the drain by means of a syphon or pipe. Continuing their improvements in 1948 the plaintiffs built a new ditch from point D to E and cut off the ditch B to E, intending to remove the entire ditch and require Moons to take their water through the ditch B–Y–C–D, to E and F as thus extended To this Wells and Moon objected, and the latter charged plaintiffs with a misdemeanor in the cutting of the ditch B–E. The plaintiffs thereupon brought this action seeking to restrain defendants Moon from further prosecution of the criminal complaint, and the defendants Wells from using the main lateral to convey more than 39.4 inches of water, and all of the defendants from interfering with plaintiffs in the removal of the branch lateral B–E. The defendants filed a joint answer and separate cross complaints, admitting the ownership of the lands and water rights as alleged by the plaintiffs and as outlined above, except that defendants deny plaintiffs' right to use the main lateral beyond B. They allege that they are the owners of rights of way through the main lateral to the points C, D and E for the conveyance of up to 70 inches of water by defendants Wells and up to 100 inches by the defendants Moon. The defendants also claim these same ditch rights by adverse possession and use for more than five years. They also allege that the main lateral from B around to C and D will not carry more than 100 inches of water and will not carry their combined streams. They also complain that the plaintiffs in constructing the drain have cut off their access to the upper part of the lateral with horses and equipment for the purpose of cleaning and maintenance. The defendants Moon further allege that they are the owners of a right to convey their water through the branch lateral B to E. The defendants Moon also claim damages to their grain crop during the season of 1948 by reason of the cutting of the branch lateral B–E. The defendants Wells claim damage to a potato crop during the season of 1948 by reason of the cutting of a dam in the lateral at C by the plaintiffs and consequent flooding.

In answer to the cross complaints the plaintiffs deny the damages alleged. They admit the occasional use by the defendants of the ditches in question for the conveyance of more than the number of inches of water represented by their respective shares in the canal company, and allege that the use for the excess flow was by permission of the plaintiffs. After trial of these issues the court found: "That the said main lateral 'A–D' and the said branch 'B–E' were both established many years ago by the predecessors in title of the plaintiffs for the irrigation of plaintiffs' lands; that thereafter defendants Wells and their predecessors used said main lateral from 'A' to 'C' and 'D' for conveyance of a maximum of 75 miners inches of water to their said lands, and defendants Moon and their predecessors used said main lateral from 'A' to

'D' and said branch lateral from 'B' to 'E' for conveyance of a maximum of 75 miners inches of water to their said lands."; and that the main lateral below X was used by all of the parties and their predecessors on a rotation basis, each party using that part of the lateral when it was not in use by either of the others, and that the length of use by each was generally in proportion to their respective acreages irrigated; that the lateral from B to D has a capacity of "at least" 100 inches; that the new ditch from D to E was constructed in a good substantial manner and will convey 100 miners inches of water to point E at an elevation the same, or slightly higher, than that at which the water is conveyed through the branch lateral B–E; that the defendants Moon were not damaged by the cutting of branch lateral B–E; that the defendants Wells were not damaged by any acts of the plaintiffs; and that the construction of the drain through the lateral at X has interfered with defendants' access to the lateral above that point for cleaning and maintenance. The court concluded as follows:

"1. That the lateral ditch 'A–D' is of sufficient capacity to adequately convey the waters of the defendants Moon and defendants Wells from the point 'A' to point 'D' upon a rotation of use basis, which is the basis upon which said defendants have acquired their rights to the use of said lateral.

"2. That all parties to this action should be required to use the said lateral below the point 'X' in rotation with each other in proportion to the amount of land irrigated by each party from said lateral below said point 'X' at the time of the commencement of this action.

"3. That the plaintiffs should be required to construct an adequate diversion box or check at point 'D' on said lateral.

"4. That in the event actual use of said new ditch from point 'D' to point 'E' discloses that the same is inadequate for conveyance of 75 miners inches of water plaintiffs should make the same adequate.

"5. That plaintiffs have the right to remove the branch lateral 'B–E' and that defendants, and each of them, should be restrained from interfering with such removal.

"6. That plaintiffs should either clean said main lateral from point 'A' to point 'X' at their own expense or should provide reasonable means of access thereto by defendants for that purpose.

"7. That the parties to this action are entitled to convey through the said main lateral from point 'X' to point 'D' on a rotation of use basis the following maximum quantities of water:

Plaintiffs Simonson 100 miners inches
Defendants Wells 75 miners inches
Defendants Moon 75 miners inches

"8. That in the event defendants Wells and Moon do not rotate the use of said lateral as between themselves they are entitled to convey through said lateral on a

rotation of use basis with plaintiffs the following quantities of water:

Defendants Wells 39.4 miners inches

Defendants Moon 48.2 miners inches

or defendants Wells and Moon are entitled at their own expense to enlarge said lateral from 'X' to 'D' to a capacity sufficient to convey 150 miners inches of water; and in either event the defendants Wells will be required to construct an adequate check and measuring box at point 'C' at their own expense.

"9. * * *

"10. * * *

"11. That the parties should be required to rotate the use of said main lateral below point 'X' over a period of fifteen days commencing on the date following the signing of a decree herein in the following order, unless otherwise agreed by the parties; Plaintiffs Simonson, defendants Wells, defendants Moon; provided whenever the parties entitled to the use of said portion of said lateral shall fail to use the same for their full period of time or at all, then the other parties in the order of their respective turns should be entitled to use the same for the period or periods to which they are entitled as herein mentioned."

The decree follows the conclusions and enjoins the parties accordingly, and then further provides: "That within 90 days after the entry of this decree plaintiffs shall install in said lateral ditch at point 'D' an adequate diversion box or check; that within the same time each party hereto shall install at all points of diversion from said ditch used exclusively by such party where the same are required to prevent injury to the ditch or to other parties, adequate gates, checks or diversion boxes; that within the same time defendants Wells shall install an adequate check and measuring box at point 'C' on said ditch."

The controlling section of the statute is as follows: "Where any lateral ditch has heretofore been, or may hereafter be, constructed across the lands of another, the person or persons owning or controlling the said land shall have the right at their own expense to change said lateral ditch to any other part of said land, but such change must be made in such a manner as not to impede the flow of the water therein, or to otherwise injure any person or persons using or interested in such lateral ditch." § 42–1207 I.C. (civil code) § 18–4308 I.C. (criminal code).

 Prior to the enactment of this statute the right of the owner of a servient estate to change the place or location of an easement did not exist. 28 C.J.S., Easements, § 84; 17 Am.Jur., Easements, § 87. It follows that the statute must be fully complied with by one seeking to exercise the right it confers. The burden was on plaintiffs to show that they had provided the defendants Moon with another ditch which would convey the water, which they had theretofore conveyed through the branch B–E, to the point of delivery at E without impeding the flow thereof, and

46

without injury either to the defendants Moon or the defendants Wells. Tomchak v. Harris, 54 Idaho 448, 32 P.2d 1025. The evidence shows that the defendants Moon irrigated the larger part of their lands with water conveyed through the branch B–E, and that only a comparatively small part thereof had been irrigated through the main lateral and diverted by them at D. Also, that they used the branch B–E at times when the main lateral from B around to C and D was being used by Wells. Since the main lateral beyond B will not carry the water of all of the parties at the same time, nor the combined water of the defendants Moon and that of either the plaintiffs or the defendants Wells, in order to take all of their water at all times by that route the defendants Moon must rotate their use of the ditch with the other parties. That is, they can use the ditch only when neither of the other parties is using it. They are deprived of the right heretofore enjoyed of irrigating through the branch ditch when the main lateral below B is in use by either of the other parties. This is an injury to the Moons within the meaning of the statute. Likewise the defendants Wells are injured by being required to abstain from the use of the main lateral when in use by Moons for the irrigation of lands which were formerly irrigated through the branch.

It also appears from the evidence that when Wells is irrigating his higher land from the diversion at C, it is necessary for him to check the water in the main lateral. When this is done the water in the lateral is backed up past the point Y toward, if not to, point B, filling the ditch to the top of the banks. Plaintiffs did not enlarge or raise this ditch or in any way increase its capacity. Neither did they enlarge the capacity of the ditch between C and D, at which latter point both Wells and Moon draw water. The evidence also shows that point D is slightly lower than E, and that the ditch connecting the two crosses a swale on a fill. The evidence is conflicting as to whether or not this part of the ditch will deliver Moons' full stream. In any event it is a "flat" or "dead" ditch, and like that portion of the ditch above C (when the water is backed up) it will tend to clog with sediment, moss and weeds. Whereas a ditch, like the branch B to E, which has a good fall, will continue relatively clean. We do not hold that a mere increase in the length of ditch, or other conditions, which result in a comparatively unimportant increase in maintenance, would be sufficient to deny the servient owner the right to change the location of a ditch. But, when such an increase in burden is accompanied by the requirement of rotating the use of the ditch, or other inconvenience, then the impediment to the flow of the water will be considered substantial and an injury within the statute.

Plaintiffs contended at the trial that by placing a proper check and measuring gate at C, the defendants Moon could draw their water through the bottom of such device

and at the same time by means thereof Wells could check the water up sufficiently to irrigate his land. But the plaintiffs did not install such a device nor offer to do so. This they would be required to do if they were to furnish defendants Moon with the means of conveying their water through that lateral while Wells was using it. However, the court did not find that the ditch has the capacity to carry the combined water of both Wells and Moon.

■ The court was also in error in requiring the defendants Wells and Moon, in the event they do not rotate their use of the ditch, to confine their use thereof to the number of inches of water which their respective shares in the canal company represent. It was shown that the canal company operates under what is known as the "demand system". That is, the water user requests the ditch rider to turn in the amount of water needed. This demand or request is complied with to the extent of the capacity of the user's ditch or lateral, when the water is available in the canal, even though the request is for more water than the shares held by the user represent. When the water in the canal is insufficient to meet all demands, the users requests are cut to a percentage either above or below the amount represented by their shares, according to the total amount of water available. It is the policy of the law to encourage the most efficient, and least wasteful, use of the waters of the state. § 42–101 I.C.; Reynolds Irrigation District v. Sproat, 69 Idaho 315, 206 P.2d 774. From the record here it appears that the method of distribution employed by this company and its users provides the user with a larger flow of water, when available, than his shares represent. This enables him to complete his current irrigation in a comparatively short time, after which the water is shut off. Under ordinary conditions this method results in better irrigation of the crops, and with less waste of water, than can be accomplished with a smaller stream of continuous flow or over a longer period. Therefore, the court should not limit the defendants to the number of inches of flow represented by their shares in the canal company.

■ Further, in this state a ditch right for the conveyance of water is recognized as a property right apart from and independent of the right to the use of the water conveyed therein. Each may be owned, held and conveyed independently of the other. Ada County Farmers' Irr. Co. v. Farmers' Canal Co., 5 Idaho 793, 51 P. 990, 40 L.R.A. 485; In re Department of Reclamation, 50 Idaho 573, 300 P. 492; Randall Canal Co., Ltd., v. Randall, 56 Idaho 99, 50 P.2d 593; Morgan v. Udy, 58 Idaho 670, 79 P.2d 295. For this reason also, defendants' ditch rights are determined by the amount of water they have conveyed through the ditches and not by the amount which their shares represent. Reynolds Irrigation District v. Sproat, supra; Pioneer Irrigation District v. Smith, 48 Idaho 734, 285 P. 474.

As a corollary of their easement to convey water through plaintiffs' premises, the defendants also have a secondary easement over the course of the ditches for the purpose of cleaning and maintenance. Gorrie v. Weiser Irr. Dist., 28 Idaho 248, 153 P. 561; Reynolds Irrigation District v. Sproat, supra. The construction of the drain and the piping of the lateral across it in the manner in which it was done, was an infringement of this secondary easement.

We have examined the evidence and, although conflicting, we find that it is sufficient to sustain the findings and conclusions of the trial court to the effect that the plaintiffs have the right to use the main lateral below point B, and that neither of the defendants suffered damage to their crops in 1948 by reason of any act or acts of the plaintiffs.

Judgment is reversed and the cause is remanded with directions to the trial court to dismiss plaintiffs' complaint and, on the issue raised by the cross complaints and answers thereto, to enter judgment in favor of the cross complainants confirming the right of each to convey up to 75 inches of water through the main lateral A to D (the use by all parties below point B down to D to be on a rotation basis) and the right of defendants Moon to convey up to 75 inches of water through the branch ditch B–E, even though the main lateral is in use by either of the other parties. This right of Moon is not in perpetuity, but is subject at all times to plaintiffs' rights under the statute above quoted. Also, plaintiffs are to be required to provide defendants with reasonable access to the upper part of the ditch, with the usual equipment, for cleaning and maintenance.

Costs are awarded to appellants.

GIVENS, C. J., and PORTER, THOMAS, and KEETON, JJ., concur.

On Petition for Rehearing

TAYLOR, J.

In their petition for rehearing plaintiffs urge that the mandate implies a right in defendants to the use of the main ditch from A to B superior to or in conflict with the right of plaintiffs. Such is not the intention. The principal controversy as litigated involves the branch B–E, and the main ditch below B. The record shows the parties have had little if any friction concerning the use of the upper part of the ditch. And the pleadings do not make an issue of the time or manner of its use. So the decree should leave the manner and time of use of the part of the ditch above the branch to be determined by agreement of the parties as they have done in the past.

Rehearing denied.

GIVENS, C. J., PORTER, THOMAS and KEETON, JJ., concur.