305 P.2d 1088

**Homer F. RAMSEYER and Maye Ramseyer,
husband and wife, Plaintiffs-Cross
Defendants-Appellants,**

v.

**J. M. JAMERSON, Defendant-Cross Com-
plainant-Respondent.**

No. 8359.

Supreme Court of Idaho.
Jan. 14, 1957.

Rayborn, Rayborn & Kramer, Twin Falls, for appellants.

Parry, Robertson & Daly, Twin Falls, for respondent.

**SMITH, Justice.**

Appellants acquired during the year 1942 and own the NW¼ of Section 29, Township 9 South of Range 16 E.B.M., together with an appurtenant water right represented by 160 shares of stock in Twin Falls Canal Company. Respondent acquired during the year 1938 and owns the E½ NE¼ of Section 30 in said township and range, situate to the west and adjoining appellants' described land, together with an appurtenant water right represented by 80 shares of stock in said canal company. One such share of stock entitles the owner to the delivery of ⅝ths of a miners inch of water for irrigation purposes. During recent years the canal company delivered when available 120% of the water share entitlements. Thusly the canal company has been delivering to appellants' lands 120 miners inches and to respondent's land 60 miners inches of water.

The natural contour of respondent's land requires delivery of irrigation water from both the west and from the east. The water appurtenant to respondent's land has been so delivered since at least the year 1932.

The water from the west is taken from the S2 Coulee into an open lateral known as the West Ditch and then conveyed north and then west to the south boundary of respondent's land. Respondent's rights in the West Ditch are not involved in this action.

The water from the east prior to the year 1947 flowed from the S Coulee into an open lateral herein referred to as the East Ditch and then through such ditch northwesterly over certain lands, including lands of appellants, a distance of about three-quarters of a mile, to the east boundary of respondent's land.

Commencing the year 1947 the water flowed from the S Coulee into and through an underground concrete 15-inch pipeline,

slightly over a half-mile in length, herein called the Ramseyer pipeline, which appellants constructed during the fall of the year 1946, over land which they then owned and over land of Orville Creed. The Ramseyer pipeline transmitted the water northerly to the south boundary of appellants' described land; from there the remaining portion of the open East Ditch conveyed the water northwesterly across appellants' land to the east boundary of respondent's land. Appellants constructed the Ramseyer pipeline in substitution for and to take the place of the major portion of the open East Ditch.

Commencing the year 1953 the water flowed through the Ramseyer pipeline, then northwesterly through an underground concrete 10-inch pipeline about three-sixteenths of a mile in length, herein called the Jamerson pipeline, to the east boundary of respondent's land. Respondent constructed the Jamerson pipeline during the fall of the year 1952, with the permission of appellants over their lands; at the same time he constructed a concrete diversion structure largely at his own expense in accordance with appellants' specifications. The Jamerson pipeline took the place of and substituted for the remaining portion of the open East Ditch.

The two pipelines when spoken of as one will be referred to as the Ramseyer-Jamerson pipeline.

Appellants caused the open East Ditch to be plowed in when it was replaced by the Ramseyer-Jamerson pipeline.

The Ramseyer pipeline has a carrying capacity of 350 miners inches, and the Jamerson pipeline has a carrying capacity in excess of 60 miners inches, of water.

Appellants' 160 acres and Orville Creed's 80 acres adjoining appellants' lands to the south are entitled to irrigation water transmitted through the Ramseyer pipeline. Respondent asserts that additionally his 80 acres are also entitled to water so transmitted. The three tracts of land total 320 acres. Under current rates of delivery by the canal company of 120% of share entitlements, 240 miners inches of water flowing through the Ramseyer pipeline,—110 inches less than its carrying capacity,— will fill the share entitlements of the 320 acres.

Following the construction of the Jamerson pipeline and the diversion structure, respondent leveled a portion of his land and rearranged his fields and irrigation ditches at a cost of $1,950. The leveling and rearrangement of fields and ditches resulted in a more efficient and less wasteful use of respondent's land and appurtenant water; as a result of such rearrangement respondent can irrigate 40.1 acres of his land through the Ramseyer-Jamerson pipeline, 17.07 acres through the West Ditch and the remaining 22.9 acres either through the

pipeline or the West Ditch. The West Ditch at times collects waste water and fills with silt. At such times it is more practical, desirable and efficient to irrigate as much of respondent's land as possible from the east through the pipeline.

At times when the canal company delivered respondent's 60 inches of water through the Ramseyer-Jamerson pipeline some overflow occurred at the diversion structure into which connects the southerly end of the Jamerson pipeline.

The issues were framed by appellants' complaint, respondent's cross complaint and the respective answers.

Appellants by their complaint seek to enjoin respondent from transmitting his irrigation waters in excess of eight miners inches through the Ramseyer-Jamerson pipeline. (During argument appellant admitted that respondent was entitled to so transmit 25 miners inches of water).

Respondent by his cross complaint asserts his right to transmit up to 60 miners inches of water through the Ramseyer-Jamerson pipeline. Respondent also seeks to quiet title in him both to an easement in the pipeline for the flow therein when desired of his full head of 60 miners inches of irrigation water together with the right of ingress and egress for purposes of regulating the flow of the water and maintaining the Jamerson pipeline.

The trial court at the conclusion of the trial, made findings of fact and conclusions of law. The court thereupon entered judgment and decree, denying any relief to appellants, and granting to respondent the relief which he sought under his cross complaint, i. e., that respondent was the owner of an easement in the Ramseyer pipeline and of an easement in the Jamerson pipeline to transmit therein when desired his 60 miners inches of irrigation water, together with the right of ingress and egress for the purpose of regulation of his water so transported and maintenance of the Jamerson pipeline; also quieting in respondent his title to such easements. Appellants have appealed from such judgment.

Appellants, by their assignments, assert that the trial court committed error in entering judgment and decree in favor of respondent in that the same cannot be supported by the pleadings.

Respondent by his cross complaint in effect alleged his ownership and sought to quiet title against appellants of a prescriptive right in the East Ditch, whether as an open lateral or as the open lateral substituted by the pipeline, for transmission and delivery to his land of the full head of his appurtenant irrigation water represented by his 80 shares of canal company stock. Respondent's cross complaint and

appellants' answer thereto framed the issue, whether respondent is entitled to a decree quieting title in him to such a prescriptive right though evidenced by an easement or otherwise. There is no merit in appellants' said assignments, since the judgment and decree are fully supported by the facts pleaded by respondent.

Appellants lastly assign error committed by the trial court in entering the judgment and decree and assert insufficiency of evidence to support the same. Appellants in urging such assignment contend:

First; that the evidence is insufficient to show delivery, through the East Ditch or through the pipelines substituted therefor, of the water appurtenant to respondent's land, which has amounted to and is 60 miners inches under the 120% rate of delivery thereof.

Second; that respondent does not have a right by easement or otherwise to transmit his 60 miners inches of water through both or either of the said pipelines.

The canal company, on its books, assigned one-half the water appurtenant to respondent's lands for delivery through the West Ditch, and one-half through the East Ditch. Under existent practices, however, an owner of water may change delivery of his water from one ditch to another and may cause his water to be delivered in one head in any ditch serving his land. The canal company in keeping with such practice since at least the year 1938 has delivered the full head of water to respondent's lands, i. e., 60 miners inches under the current rate of delivery, either through the West Ditch or through the East Ditch, or the pipelines substituted for the open East Ditch. The findings of the trial court as to those facts are supported by substantial, competent evidence consisting of the sundry records of the canal company showing delivery of the water; also the testimony of the prior owner of respondent's lands, and of respondent and his tenants. The record thusly shows that prior to the fall of 1946, when appellants constructed the Ramseyer pipeline in substitution for the major portion of the East Ditch, respondent had used the open East Ditch, throughout its entire length, for transmission and delivery of his full head of water, for a period in excess of the prescriptive period of five years.

Further, appellants adduced no evidence to negative respondent's use of the open East Ditch as open, notorious and adverse. On the contrary, appellant Homer F. Ramseyer recognized such use by respondent of the open East Ditch; for said appellant testified that just prior to the construction of the Ramseyer pipeline he proposed that respondent should pay one-half of the construction cost of the pipeline based on respondent's 80 shares of water stock in the

canal company. Respondent not only refused the proposal but asserted his existent rights in the East Ditch, replying to appellant Ramseyer, "I am right on that ditch [the East Ditch] and I am going to stay right where I am;" nor did appellants at any time prior to the commencement of the present litigation during May 1954, dispute respondent's right to the use of the East Ditch.

Respondent's uninterrupted and continuous use of the East Ditch for more than the prescriptive period of five years raises the presumption that his use was adverse and under a claim of right. I.C., § 5–209; Last Chance Ditch Co. v. Sawyer, 35 Idaho 61, 204 P. 654; Taylor v. O'Connell, 50 Idaho 259, 295 P. 247; Bachman v. Reynolds Irr. Dist., 56 Idaho 507, 55 P.2d 1314; Williams v. Neddo, 66 Idaho 551, 163 P.2d 306; Hogan v. Blakney, 73 Idaho 274, 251 P.2d 209; and here there was no evidence of parol or other license to overcome this presumption. Bachman v. Reynolds Irr. Dist., supra; Jones v. McIntire, 60 Idaho 338, 91 P.2d 373; Stickel v. Carter, 63 Idaho 78, 117 P.2d 477; Williams v. Neddo, supra. The foregoing citations also support the proposition that an easement for the flow of water through a ditch or other artificial watercourse upon the land of another may be acquired by prescription. We therefore hold that respondent acquired and is the owner of an easement or right of way for the flow of his full head of 60 miners inches of water in and through the East Ditch, even though his 80 shares of stock in the canal company evidences a water right appurtenant to his land of 50 miners inches of water.

A ditch right in the State of Idaho for the conveyance of water is recognized as a property right apart from and independent of the right to the use of the water conveyed therein. Ada County Farmers' Irr. Co. v. Farmers' Canal Co., 5 Idaho 793, 51 P. 990, 40 L.R.A. 485; In re Department of Reclamation of Idaho, 50 Idaho 573, 300 P. 492; Randall Canal Co. v. Randall, 56 Idaho 99, 50 P.2d 593; Morgan v. Udy, 58 Idaho 670, 79 P.2d 295; Simonson v. Moon, 72 Idaho 39, 237 P.2d 93. A landowner's rights in an irrigation canal or ditch are determined by the amount of water which the landowner conveys through the ditch and not by the amount of water which his shares represent in a canal company which controls the flow. Reynolds Irr. Dist. v. Sproat, 69 Idaho 315, 206 P.2d 774; Pioneer Irr. Dist. v. Smith, 48 Idaho 734, 285 P. 474; Simonson v. Moon, supra.

Simonson v. Moon, supra, announces the further rule, as applied herein, that respondent as owner of the easement in the East Ditch to transmit his irrigation water therein over the lands of others, in-

cluding appellants' lands, has a secondary easement with right of ingress and egress for the purpose of maintenance of the Jamerson pipeline, and for the regulation of his water transported by the Ramseyer-Jamerson pipeline which replaced the open East Ditch, as decreed by the trial court. Gorrie v. Weiser Irr. Dist., 28 Idaho 248, 153 P. 561; Reynolds Irr. Dist. v. Sproat, 69 Idaho 315, 333, 206 P.2d 774.

█ Appellants further recognized respondent's rights in the East Ditch, as substituted in major part by the Ramseyer pipeline, by an instrument of easement in writing dated November 18, 1946, which appellants cause to be prepared by their own attorney and which Orville Creed and wife executed in appellants' favor. Appellants at that time recognized respondent's rights in the open East Ditch as then contemplated to be substituted in large part by the underground Ramseyer pipeline. That instrument of easement recites in part:

"That the parties of the first part [Creed and wife] hereby give and grant the above described easement for the construction of an underground ditch *on the condition* that the party of the second part [appellant Homer F. Ramseyer] shall cause *said underground ditch to be so constructed that it will have sufficient capacity to carry the water to be used by the party of the second part* on his lands and premises hereinabove described *and also the water to be used by the said J. M. Jamerson* [respondent] who owns the East Half of the Northeast Quarter (E½ NE¼) of Section Thirty (30), Township Nine (9) South, Range Sixteen (16) E.B.M. *in an amount equal to water heretofore conveyed through that certain open ditch \* \* \*.*" (Emphasis supplied.)

█ The foregoing facts and circumstances, and particularly appellants' substitution in large part of the open East Ditch by the underground East Ditch or Ramseyer pipeline, imposed upon appellants the statutory duty of I.C. § 42–1207, which reads:

"Change of lateral ditch.—Where any lateral ditch has heretofore been, or may hereafter be, constructed across the lands of another, the person or persons owning or controlling the said land shall have the right at their own expense to change said lateral ditch to any other part of said land, *but such change must be made in such a manner as not to impede the flow of the water therein, or to otherwise injure any person or persons using or interested* in such lateral ditch." (Emphasis supplied.)

The aforesaid section of the statute placed on appellants the burden of providing respondent a ditch, in substitution of the open

East Ditch, sufficient to convey respondent's full head of water when needed or desired, without injury to respondent. Simonson v. Moon, supra. The findings of the trial court recognized the "change of lateral ditch" theory set out in I.C. § 42–1207.

The Jamerson pipeline which respondent constructed at his own expense to replace the remaining northerly portion of the open East Ditch merely changed the method of transmitting respondent's water by the open ditch, to the underground ditch. Respondent discussed with appellants the contemplated change, whereupon appellant Homer F. Ramseyer imposed certain conditions, i. e., that the Jamerson pipeline, as well as the diversion structure of appellants' design and specifications between the Ramseyer and Jamerson pipeline, would be constructed at respondent's expense, and that the canal company would deliver the water into the diversion structure and the Jamerson pipeline. Respondent having met those conditions, pursuant to such understandings and agreement between him and appellants, thereupon constructed the Jamerson pipeline, and also constructed the diversion structure according to appellants' specifications.

The evidence supports the finding of the trial court that appellants benefited by the construction of the underground Jamerson pipeline in that such pipeline eliminated from the surface of appellants' farm land the northerly remaining portion of the open East Ditch which, particularly over the course of its most northerly 500 feet, dropped so rapidly in elevation as to be considered an extremely fast ditch with consequent loss of appellants' soil due to erosion; further, the conduct of appellant Homer F. Ramseyer in joining with respondent in the execution of a pooling agreement in writing with the Agricultural Conservation Program (Defendant's Exhibit 6) indicates that appellants desired such remaining northerly portion of the open East Ditch to be eliminated from the surface of their farm land and replaced by the underground ditch or pipeline thereby to "conserve or improve the agricultural resources of the community in which the aforesaid farms [of appellants and respondent] are located."

Respondent in reliance upon the conduct of appellants and the aforesaid agreement, expended considerable moneys in the construction of the Jamerson pipeline and the diversion structure; also he leveled a considerable portion of his land and rearranged certain of his fields and irrigation ditches at a further expense of some $1,950. Those expenditures by respondent and the resultant installations and improvements resulted in a more beneficial use of his land and the appurtenant water.

The installation of the Jamerson pipeline and the diversion works in nowise changed or affected respondent's easement in the East Ditch, to transmit therein to his land

60 miners inches of water when needed or desired, but only changed the location of such easement in an open surface ditch to an underground ditch; and such was accomplished through the cooperation of both appellants and respondent and by agreement arrived at between them.

Respondent in reliance upon such agreement materially changed his position; pursuant thereto he made substantial expenditures of moneys with resultant valuable installations, and improvements in and upon his land, all with the full knowledge of appellants. Under those circumstances those rights which respondent has acquired have become and are irrevocable. The applicable principle is aptly stated in Harsin v. Pioneer Irr. Dist., 45 Idaho 369, 263 P. 988, 990:

"The right under consideration was acquired by express agreement, * * * expenditure of money and labor in the construction of the ditches, the moving of his house and buildings to this high land by the plaintiff, the planting of shade and fruit trees, berry bushes, and gardens, all of which was done in reliance upon this license or easement, and with full knowledge of the owner of the servient estate, present strong equities in favor of plaintiff. * * * These facts, with the other circumstances in the case, would preclude the district, on the principle of estoppel,

from now questioning plaintiff's right to maintain and use this lateral."

See also Eagle Rock Corp. v. Idamont Hotel Co., 59 Idaho 413, 85 P.2d 242; Checketts v. Thompson, 65 Idaho 715, 152 P.2d 585; Stoner v. Zucker, 148 Cal. 516, 83 P. 808; Keystone Copper Mining Co. v. Miller, 63 Ariz. 544, 164 P.2d 603; Coumas v. Transcontinental Garage, 68 Wyo. 99, 230 P.2d 748, 41 A.L.R.2d 539.

Appellants complain of some overflow onto their land over weirs in the diversion structure. Such overflow, if any, occurs during the short time it takes the canal company's ditch rider, after turning the water into the Ramseyer's pipeline, to arrive at and unlock the Creed head gate when Creed has ordered water, and then proceed to the diversion structure and unlock the Jamerson head gate, thereby to regulate the flow of water to each such water user.

Appellants admit that any such overflow is due to the faulty design of the diversion structure. The evidence shows that such faulty design is capable of being corrected by a relatively small expenditure. Appellants having assumed responsibility for the design and specifications of the diversion structure, cannot be heard to complain of its inefficiency or look to respondent either to remedy the defects, or for damages if any, attributable thereto.

The evidence is without dispute that in the area served by Twin Falls Canal

Company the change of use of irrigation water from one ditch or head gate to another and from more than one ditch into one ditch, in applying water to farm land, results in less waste and better irrigation of crops. This is a policy sanctioned by law, so stated in the case of Simonson v. Moon, supra [72 Idaho 39, 237 P.2d 98], as follows:

"It is the policy of the law to encourage the most efficient, and least wasteful, use of the waters of the state. § 42–101 I.C.; Reynolds Irr. Dist. v. Sproat, 69 Idaho 315, 206 P.2d 774. From the record here it appears that the method of distribution employed by this company and its users provides the user with a larger flow of water, when available, than his shares represent. This enables him to complete his current irrigation in a comparatively short time, after which the water is shut off. Under ordinary conditions this method results in better irrigation of the crops, and with less waste of water, than can be accomplished with a smaller stream of continuous flow or over a longer period."

The judgment and decree of the trial court is affirmed. Costs to respondent.

KEETON, C. J., and PORTER and TAYLOR, JJ., concur.

The late ANDERSON, J., sat at the hearing, but died before the Court reached its decision.