327 P.2d 349

Victor AGUIRRE, Plaintiff-Appellant,

v.

Denver A. HAMLIN, Defendant-Respondent.

No. 8596.

Supreme Court of Idaho.

June 26, 1958.

Rehearing Denied July 29, 1958.

Perce Hall, Mountain Home, for respondent.

Robert F. McLaughlin, Mountain Home, Carver, McClenahan & Greenfield, Boise, for appellant.

SMITH, Justice.

Appellant during 1945 acquired and is the owner of the south half, and respondent during 1953 acquired and is the owner of the north half, of the northeast quarter of the southwest quarter of section 12, township 4 north, of range 6 east of the Boise Meridian, in Elmore County, Idaho. Both parcels prior to 1938, were unenclosed sagebrush land.

During the year 1938, one Tobin, appellant's predecessor in interest, cleared the land now owned by appellant and, in order to transmit water to it, constructed a lateral ditch approximately two feet deep and four feet wide, capable of carrying some 150 miners inches of water. A portion of this ditch extended diagonally across respondent's land; it commenced generally at a point near the center of the east boundary of respondent's land, and then extended southwesterly to a point intersecting respondent's south boundary, approximately 734 feet west of respondent's southeast property corner. This ditch is hereinafter sometimes referred to as the diagonal lateral or ditch.

Crops grown on portions of the land now owned by appellant were irrigated each year during the irrigation season, commencing the year 1939, by use of the lateral, until appellant was deprived of its use as hereinafter related. Such use appears supported by the testimony of all witnesses familiar with the facts, including one Spence, a defense witness.

When respondent acquired his 20 acre tract of land in 1953 the diagonal ditch was somewhat obscured by sagebrush and weed growths. Respondent cleared the land during the fall of 1953, and in plowing it, destroyed this ditch; as a result, appellant was unable to irrigate a portion of the hay crop grown on his tract during the 1954 and 1955 crop seasons.

Appellant brought this action the forepart of June 1955, seeking to enjoin respondent from interfering with appellant's restoration and use of the diagonal ditch, and for damages to his 1954 hay crop; later, by supplement to his complaint, he sought recovery of damages to his 1955 hay crop. Appellant also sought an injunction pendente lite, which the trial court issued, restraining respondent from preventing appellant from repairing, replacing or constructing a ditch on respondent's property over the original course of the former diagonal lateral, or in the alternative over such course as designated by respondent, to replace the destroyed lateral.

Prior to the issuance of the injunction, respondent, at his expense, voluntarily constructed a ditch on his property extending from his southeast property corner, west to the point where the destroyed lateral had

entered appellant's property. A portion of this ditch was washed out when appellant turned in a head of water beyond its capacity, before it had become settled and stabilized by being "soaked up."

After issuance of the preliminary injunction, appellant hired engineers and a construction firm to, and they did, build on respondent's land a ditch extending from respondent's southeast property corner, west along his south boundary, approximately to the point where the original ditch had entered appellant's property. The new ditch according to an engineer's estimate, was capable of carrying a maximum of 500 miners inches of water, with an ordinary capacity of 250 to 300 inches, and was more elaborate and more expensively built than farm ditches in that area. This new ditch used, for ditch and road purposes, a strip of respondent's land approximately 30 feet wide and 800 feet long.

Respondent in his answer admitted that he had plowed in the ditch extending diagonally across his property, alleging that appellant had no right, prescriptive or otherwise, to use or maintain such a ditch. Respondent then alleged,

"that the defendant [respondent] has never denied plaintiff the right, if he so desired, to use a ditch running southerly to the west side of defendant's land and alleges * * * the defendant constructed a ditch from the southeast corner of defendant's land westerly to a point approximately 734 feet west of the southeast corner of defendant's land, which ditch was of sufficient size and fall adequately to irrigate the plaintiff's land and which ditch was available for plaintiff's use, if he desired to use the same."

Respondent then cross-complained for damages allegedly resulting from the taking of his land by appellant for the construction of the new ditch, and for punitive damages.

The case, on the issues joined, was tried to the court sitting without a jury. The trial court found that appellant had not acquired a prescriptive right to the use of a ditch across respondent's land; that respondent was entitled to judgment of $250 on his cross-complaint against appellant for his taking approximately one-half acre of respondent's land for ditch and road purposes, but was not entitled to punitive damages. The court thereupon entered judgment in respondent's favor on his cross-complaint in the sum of $250 plus costs.

Appellant moved for a new trial on the ground of newly discovered material evidence which allegedly he could not with reasonable diligence have discovered and produced at the trial, which motion the trial court denied.

Appellant thereupon perfected an appeal from the judgment and from the order denying his motion for a new trial.

Appellant assigns error of the trial court in failing to apply I.C., sec. 42–1207 in this cause, in failing to enter judgment in favor of appellant, and in entering judgment in favor of respondent for $250 compensatory damages.

I.C., sec. 42–1207 reads:

"Change of lateral ditch.—Where any lateral ditch has heretofore been, or may hereafter be, constructed across the lands of another, the person or persons owning or controlling the said land shall have the right at their own expense to change said lateral ditch to any other part of said land, but such change must be made in such a manner as not to impede the flow of the water therein, or to otherwise injure any person or persons using or interested in such lateral ditch."

Respondent on his direct examination related that when his farm helper was still engaged in plowing in the diagonal ditch, appellant made considerable objection about the destruction of his ditch; that, as a result of an agreement reached to replace the destroyed ditch, respondent during May 1955, as he recalled, constructed a ditch extending from his southeast property corner, west along his south property line to a point where the destroyed lateral had entered appellant's tract. This was before any hearing had relating to the matter of injunctive relief which appellant sought. Respondent further testified that leveling instruments showed a 7-inch fall in this new ditch; that upon finishing the ditch he and his helpers pumped a flow of 60 to 70 inches of water into it and that some of the flow reached the end of the ditch. He estimated that if the ditch had been permitted to become hardened and packed by seasoning, its capacity would have been 125 to 150 inches of water. Shortly after that time, appellant turned an estimated head of some 250 inches of pumped water into the ditch which exceeded its capacity causing it to break.

The injunction then having been issued, appellant caused the larger ditch to be constructed with the help of engineers and a construction firm, using therefor, and additionally for a road, a strip of respondent's land approximately 30 feet wide and 800 feet long.

■ It is clear that respondent, both by his pleadings and his actions, recognized appellant's right to a ditch across his, respondent's property; also that respondent recognized his own right, at his expense, to change the location of the existing diagonal lateral to another location on his land. Whatever dispute may have existed as to appellant's right to an easement for the diagonal lateral, appears to have been set at rest by the parties themselves by their own compromise and settlement.

■ Compromises and settlements are favored by the law and will be sustained if

fairly made. 15 C.J.S. Compromise and Settlement § 23, p. 738; Leaper v. Vaught, 45 Idaho 587, 264 P. 386; Heath v. Potlatch Lumber Co., 18 Idaho 42, 108 P. 343, 27 L.R.A.,N.S., 707; Bennett v. Deaton, 57 Idaho 752, 68 P.2d 895. In Nelson v. Krigbaum, 38 Idaho 716, 226 P. 169, 170, appears the following statement of the rule:

"The law favors the avoidance or settlement of litigation, and compromises in good faith for such purposes will be sustained as based upon a sufficient consideration, * * *."

And at 15 C.J.S. Compromise and Settlement § 3a, p. 715, it is stated:

"Parties may settle any part of a controversy and leave the rest for litigation. So a compromise and settlement of litigation need not embrace all the matters in issue; adjustment of single issues, although not necessarily determinative of the outcome, should be encouraged."

Wolverine Ins. Co. v. Klomparens, 273 Mich. 493, 263 N.W. 724; Browne v. Merchants Co., 186 Miss. 398, 191 So. 58; Applewhite v. Sessions, Tex.Civ.App., 131 S.W.2d 301; Milwaukee Mechanics' Ins. Co. v. Ciaccio, 7 Cir., 1930, 38 F.2d 153.

■ Appellant's assignments of error are meritorious. The trial court failed to recognize herein the application of I.C., sec. 42–1207 as the parties themselves had applied the same in compromise and settlement of the controversy regarding appellant's right to an easement sufficient to accommodate the diagonal lateral over respondent's land, or in lieu thereof, to a corresponding easement for a ditch over respondent's lands changed to a location, at respondent's expense, different from that of the diagonal lateral.

Whether the ditch as constructed by respondent was constructed "so as not to impede the flow of water therein" is not before us to determine. Suffice it to say that appellant under the compromise and settlement became entitled to the ditch and necessary easement therefor in its changed location of sufficient capacity to transmit his water to the portion of his lands as formerly irrigated by the diagonal lateral, as contemplated by I.C., sec. 42–1207.

■ Appellant did not, however, become entitled to a ditch of greater size and capacity, and to an easement therefor, than the original diagonal lateral. He is entitled to a ditch and easement therefor over respondent's lands of similar construction and capacity as the diagonal lateral, over the route as designated by respondent, extending some 734 feet from respondent's southeast property corner, west along his south boundary to a point where the diagonal lateral formerly entered appellant's property. The evidence indicates that appellant overreached in his appropriation

of respondent's lands for purposes of the new ditch and easement therefor.

Respondent therefore became entitled to compensatory damages to be determined by the trial court and assessed against appellant, for the value of such portion of the 30 foot strip of respondent's property taken for purposes of an easement for the new ditch and the road, as such easement exceeds the area necessary for a new ditch of similar construction and capacity as the former diagonal lateral; such also to recognize the right to a secondary easement for purposes of maintenance of the ditch. Simonson v. Moon, 72 Idaho 39, 237 P.2d 93; Ramseyer v. Jamerson, 78 Idaho 504, 305 P.2d 1088.

Whether appellant is entitled to damages against respondent on account of alleged partial destruction of his hay crop for the crop seasons of 1954 and 1955 and if so, the amounts thereof, also are matters for determination of the trial court.

We find it unnecessary to dispose of appellant's remaining assignments of error.

The judgment is reversed and the cause remanded with instructions to the trial court to determine the two aforesaid questions and to enter judgment accordingly, or, in his discretion, to grant a new trial. Costs to appellant.

PORTER, TAYLOR and McQUADE, JJ., concur.

KEETON, Chief Justice. (dissenting).

I am unable to follow the reasoning of the majority, or the legal conclusions reached.

The parties to this action own contiguous and adjoining lands which are divided by a common east and west boundary line. The ditch, constructed by the predecessor in interest of plaintiff, runs diagonally across defendant's land and at the common boundary enters land now owned by plaintiff.

On competent substantial and uncontradicted evidence, the trial court found:

"That all of said land [i.e. the separate parcels owned by the litigants] was open, unenclosed, uncultivated, unoccupied sagebrush land prior to 1938; that in the year 1938 one Gene Tobin, the plaintiff's predecessor in interest, cleared the parcel now owned by the plaintiff and constructed a lateral ditch diagonally across what is now the defendant's parcel of land, which ditch was constructed to carry water to the plaintiff's parcel of land; that at the time of the construction of said ditch across the land now owned by the defendant, said defendant's land was open, unenclosed, unoccupied, uncultivated sagebrush land without any improvements thereon of any kind.

"That the defendant acquired his parcel of land above described in the

year 1953 at which time defendant's land was open, unenclosed, unoccupied sagebrush land, and in the fall of the year 1953 he cleared the same of sagebrush and proceeded to fence, plow and level the same and at that time discovered for the first time the lateral ditch constructed by the plaintiff across his property; that the defendant then filled in said ditch.

"That plaintiff's use of the ditch across the unenclosed and unoccupied property, now owned by the defendant, from 1939 to 1953 was not such open and notorious use by plaintiff as would reasonably impart notice of such use to defendant or his predecessors in interest; that plaintiff did not establish that defendant or his predecessors in interest had any notice or knowledge of said ditch, actual or constructive prior to 1953, or that plaintiff had at any time acquired an easement to such ditch by way of purchase or condemnation, or that plaintiff or his predecessors had any license or permission to construct said ditch in the first instance, from the then owner."

It thus clearly appears that the right to the use of the ditch to carry water which plaintiff now claims was conceived in a wilful trespass over and across open, unimproved and uncultivated lands of another. Plaintiff now claims that this trespass has ripened into a right by adverse possession and user.

Sec. 42–1207, I.C. cited in the majority opinion to sustain the conclusion reached has no application to the situation. This section refers, and can only refer, to a lawful, valid easement across another's property. It refers to a ditch lawfully established and does not cover a situation of trespass presented in this proceeding. No right of way for a ditch having been acquired, plaintiff had no right to construct or require defendant to construct a new ditch across defendant's land.

Title by adverse possession cannot be acquired over and across unimproved, uncultivated, unenclosed lands in the manner here attempted. No authority is cited in the majority opinion to sustain such a conclusion, and none is cited in the brief of appellant.

I think the rules covering the situation presented are found in the following citations of authority: 17A Am.Jur. 683, Sec. 71; 19 C.J. 958, Sec. 181; 28 C.J.S. Easements § 68, p. 734.

In 17A Am.Jur. 683, Sec. 71, the author states the rule as follows:

"The prevailing principle seems to be that while a way may be acquired by user or prescription by one person over the uninclosed land of another, mere use of the way for the required time is not, as a general rule, sufficient

to give rise to the presumption of a grant. Generally therefore, some circumstances or act, in addition to, or in connection with, the use of the way, tending to indicate that the use of the way was not merely permissive is required in such case to establish a right by prescription."

In 2 C.J.S. Adverse Possession § 41, p. 554, the author, with citation of authority, states the rule:

"Open, visible, and notorious possession is required where the true owner is without actual knowledge of the hostile claim."

Again in 2 C.J.S. Adverse Possession § 45, p. 558:

"It is essential to the acquisition of title by adverse possession that the true owner shall have knowledge or notice, actual or constructive, that the possession is hostile or adverse. The true owner must have actual knowledge of the hostile claim or the possession must be so open, visible, and notorious as to raise a presumption of notice to, or knowledge by him of the adverse claim.

In the present situation plaintiff does not claim that the true owner of the land had any notice, actual or constructive of plaintiff's claimed right, or that he knew or had reason to know, of the existence of the claimed right of way prior to 1953.

An authority almost identical with the facts herein set forth is Todd v. Sterling, 40 Wash.2d 40, 273 P.2d 245.

"Public highway over private property can be acquired by prescription but claimant must prove that his use of the other's land has been open, notorious, continuous, and uninterrupted over a uniform route adverse to the owner of the land sought to be subjected, and with the knowledge of such owner when he was able, within the law, to assert and enforce his rights."

To the same effect, see Northwest Cities Gas Co. v. Western Fuel Co., 13 Wash.2d 75, 123 P.2d 771, syl. 9, and Fullenwider v. Kitchens, 223 Ark. 442, 266 S.W.2d 281, 46 A.L.R.2d 1135, 1138; Hester v. Sawyers, 41 N.M. 497, 71 P.2d 646, 112 A.L.R. 536; Schudel v. Hertz, 125 Cal.App. 564, 13 P.2d 1008; Schulenbarger v. Johnstone, 64 Wash. 202, 116 P. 843, 35 L.R.A.,N.S., 941; LaRue v. Kosich, 66 Ariz. 299, 187 P.2d 643.

In Hester v. Sawyers, supra [41 N.M. 497, 71 P.2d 651], the Court said:

"In this state, where large bodies of privately owned land are open and unenclosed, it is a matter of common knowledge that the owners do not object to persons passing over them for their accommodation and convenience, and many such roads are made and

used by neighbors and others. Under the circumstances it would be against reason and justice to hold that a person so using a way over lands could acquire any permanent right, unless his intention to do so was apparent to the owner, or so plainly apparent from acts that knowledge could be imputed to him."

In an annotation to this case, 46 A.L.R.2d 1140, the annotator cites cases in many jurisdictions in support of the rule above announced.

The reason for the rule is very apparent. In many instances the owner of the land is not in a position to detect or prevent others from crossing his land. He would have no notice of any such adverse claim and would not be in a position to assert his rights until the statute of limitations had run. If the rule announced in the majority opinion is to prevail, one absent from his unimproved, uncultivated, unenclosed land could, in effect, have his land confiscated by roads, easements, right of ways, of which he had no knowledge or notice, constructive or otherwise.

In the present situation, the use to which plaintiff put defendant's land was neither open nor notorious, and with absence of knowledge of defendant, or his predecessors in interest.

Even neighbors living in the vicinity of the ditch did not know of its existence, and it could not be seen because of the sagebrush and other growth until discovered by one actually attempting to cross it.

As no valid or subsisting easement was created or existed in a lawful manner, plaintiff would not have the right to require defendant, at his own expense to change the course of the ditch to another part of his land.

In fact, plaintiff had no water right to irrigate the twenty acres owned by him and the water which the ditch running across defendant's land carried, if any, was waste or unused seepage water from water rights of plaintiff, or other irrrigators. For some of the years, there was no surplus water and the ditch carried no water to defendant's land.

The discussion of compromise in the majority opinion has no bearing on the issues. If the controversy were compromised by the parties, I see no necessity of reversing the judgment and remanding the cause for a new trial.

To me the majority opinion presents an entirely new method of acquiring title to another's property, which is sustained by no precedent cited.

The judgment should be affirmed.